**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>RELIZ TECHNOLOGY GROUP HOLDINGS INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10371 (TMH)<br><br>(Jointly Administered)<br><br>**Objection Deadline: May 5, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: May 12, 2026 at 2:00 p.m. (ET)** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL BANKRUPTCY RULE 2004-1 DIRECTING THE EXAMINATION AND PRODUCTION OF DOCUMENTS**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (the "Debtors"), by and through its undersigned proposed counsel, hereby respectfully moves (the "Motion"), pursuant to section 105(a) and 1103(c) of title 11 of the United States Code (the "Bankruptcy Code"), rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2004-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") authorizing the Committee to conduct examinations of: (i) Nicholas Hammer; Gordon Wallace; Brian King; Gabriella Kusz, Head of Strategy; Neil Van Hurs; Amy Shelly; Joseph Perry; and other current and former directors and officers of the Debtors (the "D&Os"); (ii) John Divine; Ray Nasser; and other former employees of the Debtors (the "Debtors' Former Employees"); (iii) Celsius Network Ltd. ("Celsius"); Maple Finance; CME Ventures; Rosemoor; Babel Finance; Clark Sharp & Reynolds; Nexo Capital Inc.; AEXA Digital Infrastructure; and other current and former

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Reliz Technology Group Holdings Inc. (6265); Reliz Technologies LLC (1968); Reliz LTD (N/A); and Reliz CI LTD (N/A). The Debtors' service address is 401 West Ontario St., Suite 400, Chicago, IL 60654.

prepetition lenders and investors of the Debtors (the "Prepetition Lenders"; and together with the D&Os and Debtors' Former Employees, the "Relevant Parties"), and permitting the Committee to issue requests substantially in the form attached hereto as **Exhibit B**, for the production of documents and communications within the respective party's possession, custody, or control and the provision of testimony in a manner consistent with the Proposed Order that are responsive to the categories and topics set forth in therein (the "Subpoenas" or "Requests").

In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Since its formation, the Committee has been charged with answering a fundamental question at the heart of these cases: how did a roughly $100 million shortfall arise in BlockFills' books and records such that customer accounts cannot be returned in full, whether in crypto, cash, or otherwise? In furtherance of that mandate, the Committee has undertaken both formal and informal efforts to gather information, including outreach to creditors and other parties in interest and multiple meet-and-confers with the Debtors' special committee counsel regarding potential informal interviews of current and former directors and officers.

2. Through those discussions, it became clear that the Committee will not be permitted to participate in any such informal interviews without jeopardizing the assertion and preservation of applicable privileges. That limitation effectively forecloses a cooperative, informal path for the Committee to obtain critical information necessary to fulfill its duties.

3. Furthermore, the Committee reached out to counsel for the Debtors regarding informal processes for interviews and discovery. Because the majority of the recipients are related to the Debtors, the Committee sought the Debtors' consent to this Motion, in hopes of submitting the Motion on an uncontested basis. The Debtors have taken the position that because they do not

represent each of the Relevant Parties individually, the Debtors' refuse to provide such consent. Additionally, despite the Committee's efforts to meet with some of the individuals listed herein, it has been unable to discuss this Motion with all of the Relevant Parties. As a result, the Committee must now avail itself of the tools provided under the Bankruptcy Code and proceed under Rule 2004 to obtain documents and testimony from relevant parties.

4. The Committee's investigation is not limited to understanding the causes of the shortfall. It also necessarily encompasses whether the Debtors' current or former directors and officers, or other parties in interest, may bear civil liability or potential criminal exposure arising from the conduct at issue. These issues are particularly urgent in light of the plan currently on file, which contemplates releases and is scheduled to be heard in the coming months. The Committee cannot meaningfully evaluate or take a position on those proposed releases without first developing a sufficient factual record.

5. Accordingly, the Committee must act now, and act expeditiously, to conduct the discovery necessary to carry out its statutory obligations. While the Committee does not yet have definitive answers, it believes that the discovery sought through this Motion will allow it to meaningfully assess the relevant conduct and advocate on behalf of the estate and its constituents. The requests and topics included in the Subpoenas are intentionally broad to capture information that the Committee requires to conduct its investigation. For these reasons, the Committee respectfully requests that the Court grant this Motion and permit the Committee to proceed with its investigation without further delay.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory and legal predicates for the relief requested herein are 11 U.S.C. § 1103, Rule 2004 and 9016, Local Rule 2004-1.

9. The Committee consents to the entry of a final order in connection with this Motion in accordance with Local Rule 9013-1(f) if it is determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A. General Background

10. On March 12, 2026, the Debtors created a special committee (the "Special Committee"), comprised of disinterested director Matthew Kahn. Among other things, the Special Committee is charged with managing any potential conflict matters, including investigating, releasing, or settling certain potential claims or causes of action of BlockFills, if any.

11. On March 15, 2026, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b), in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

12. On March 27, 2026, the United States Trustee for the District of Delaware (the "United States Trustee") filed its *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 104] pursuant to section 1102(a)(1) of the Bankruptcy Code.

13. On March 30, 2026, the Committee selected Morris James LLP as its counsel and commenced an investigation into assets of the estate that could provide recoveries for general unsecured creditors. On April 1, 2026, the Committee selected FTI Consulting, Inc. as its proposed financial advisor.

14. On April 2, 2026, the Committee issued its initial requests for information on an informal basis. To date, the Committee has not received a substantial production of documents, notwithstanding the Debtors agreeing to produce documents responsive to those requests on a rolling basis.

**B. Factual Background and Need for Investigation**

15. BlockFills was founded in 2017 and raised approximately $43 million in equity through a Pre-Series A and Series A round. D.I. 3 (the "First Day Declaration") ¶¶ 16–17. The Debtors operated a multi-faceted cryptocurrency platform offering trading, lending, and liquidity services supported by proprietary technology and relationships with liquidity providers. *Id.* ¶¶ 18–29.

16. From 2022 through 2025, the Debtors suffered significant losses tied to lending relationships. The Debtors loaned digital assets to Babel Finance, resulting in approximately $8.5 million in unrecoverable exposure following its bankruptcy. *Id.* ¶ 44. A separate 50 BTC loan to Clark Sharp & Reynolds (Coinsource) defaulted and remains unsatisfied despite a judgment. *Id.* ¶ 45.

17. The Debtors also entered into a financing arrangement with Nexo Capital Inc. in connection with a loan to AEXA Digital Infrastructure, which ultimately defaulted. *Id.* ¶¶ 46–47. The resulting dispute required the Debtors to pay approximately $12 million to Nexo, further impairing liquidity. *Id.* ¶ 48.

18. Separately, a lending dispute with Celsius resulted in arbitration and promissory notes exceeding $16 million in original principal, with approximately $4.8 million outstanding as of the petition date. *Id.* ¶¶ 49–54. In total, the Debtors reported approximately $145 million in unsecured debt. *Id.* ¶ 38.

19. At the same time, the Debtors engaged in the routine commingling of customer and corporate funds, using customer assets to fund operations and obligations. *See* First Day Hr'g Tr., 54:4–22 (D. Del. Bankr. Mar. 17, 2026); D.I. 10 ¶ 14.

20. These practices, combined with failed lending relationships and significant outflows, contributed to a substantial shortfall in the Debtors' financial position—effectively a massive balance sheet deficiency approaching $100 million when accounting for unrecovered loan assets and customer obligations. *Id.* ¶ 38.

21. In light of these issues, the Committee is investigating the Debtors' prepetition conduct, including the use and transfer of customer assets, lending practices, and the causes of the Debtors' liquidity collapse. The Committee has engaged FTI Consulting to trace digital assets on the blockchain and reconstruct cash flows to identify the movement of funds and potential recoveries.

22. The Committee has attempted to obtain this information informally to conserve estate resources. However, those efforts have reached an impasse. The Debtors' Special Committee and its counsel have asserted privilege over their investigation and declined to provide meaningful access to underlying information. As a result, the Committee is forced to conduct its investigation through formal discovery pursuant to Rule 2004, including the need to obtain discovery from and conduct examinations of the Debtors' former and current directors and officers, former employees, and current and former lenders and investors.

**REQUESTED RELIEF**

23. To enable the Committee to conduct a thorough and complete investigation in this action, the Committee requests entry of an order, substantially in the form attached hereto as **Exhibit A**, directing the Relevant Parties to produce the documents requested in the respective Requests For Production on a rolling basis, but in any event within seven (7) days of entry of an order granting this Motion, and to appear for an examination within seven (7) days of entry of the same.

**BASIS FOR RELIEF**

24. Under Bankruptcy Code section 105(a), the Court maintains broad equitable powers to fashion an order or decree in aid of the enhancement of the value of the Debtors' estates for the benefit of all stakeholders. 11 U.S.C. § 105(a). Bankruptcy Rule 2004(a) provides that "[o]n a party in interest's motion, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).

25. Discovery under Bankruptcy Rule 2004 includes within its scope any matter that may relate to the property and assets of the estate; the financial condition of the debtor; and any matter that may affect the administration of a debtor's estate. *See* Fed. R. Bankr. P. 2004(b); *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 354 n.6 (3d Cir. 2007) ("Federal Rule of Bankruptcy 2004 allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate."); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 564–65 (3d Cir. 2003) ("[A] creditors' committee may certainly assist a debtor in locating property under Bankruptcy Rule 2004 . . . ."); *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2010) ("The purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate.").

26. Bankruptcy Rule 2004 "affords both debtors and creditors the broad rights of examination of a debtor's or third-party's records." *See Snyder v. Soc'y Bank*, 181 B.R. 40, 41 (S.D. Tex. 1994) (citing *Cameron v. United States*, 231 U.S. 710, 716 (1914)); *see also In re E. W. Resort Dev. V, L.P., L.L.L.P.*, 10-10452 (BLS), 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014) ("Rule 2004 examinations are often used to discover assets, and courts have recognized that the scope of a 2004 examination is 'unfettered and broad' and the examination is in the nature of a 'fishing expedition.'"). Bankruptcy Rule 2004 permits broad discovery because "[t]he purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

27. This broad scope extends to any third parties who have a relationship with the debtors and includes the designation of an informed person to appear for an oral examination. *See In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (Rule 2004 examination "may extend to creditors and third parties who have had dealings with the debtor.") (citations omitted); *In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987) ("The application of the discovery device of Bankruptcy Rule 7030 (Fed. R. Civ. P. 30), for a corporation to designate and inform persons to testify on its behalf to Bankruptcy Rule 2004 examinations is both consistent with and assists in the accomplishment of expeditious administration."); *see also In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. D. Wis. 1984) ("Where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets

by examining not only the debtor, but also other witnesses, such inquiry is allowed."). Accordingly, bankruptcy courts routinely require third parties to produce documentary and testimonial discovery pursuant to Rule 2004. *See, e.g., Millennium*, 562 B.R. 614, 628 (D. Del. Bank. 2016). In *Millennium*, the court granted a Rule 2004 examination of third parties to determine "the scope of viable claims that may exist on behalf of the Plan trusts against potential third parties that may be culpable for causing such harm to the Debtors." *Id*. at 627.

28. As a fiduciary for all unsecured creditors, the Committee is granted broad statutory powers to, among other things, "investigate the acts, conduct, assets and liabilities and financial condition of the debtor, . . . and any other mater relevant to the case or to the formulation of a plan." 11 U.S.C. §1103(c)(2). Each request and topic in the Requests seeks information concerning the acts, conduct, property, liabilities, and/or financial condition of the Debtor, or matters affecting the administration of the Debtor's estate.

29. Specifically, the Requests seek, among other things, information on the commingling of customer assets, the actions of former and current directors and officers, events leading to the Debtors' filing for bankruptcy, and potential causes of action.

30. Discovery is warranted to allow the Committee to investigate the events before and leading up to the Debtors' bankruptcy.

31. In sum, the information sought through the Requests falls squarely within the permissible scope of discovery under Bankruptcy Rule 2004. Accordingly, relief requested herein should be granted to permit the Committee to adequately investigate claims against the Debtors' estate and prevent dissipation of assets.

## CERTIFICATION PURSUANT TO LOCAL RULE 2004-1

32. The Committee met and conferred with counsel for the Special Committee on multiple occasions. During those discussions, the Committee and the Special Committee discussed the possibility of coordinating joint fact discovery in these Chapter 11 Cases. Ultimately however, the parties' interests diverged, and Special Committee counsel declined to permit the Committee to communicate with former and current directors and officers of the Debtors. As a result, the Committee is compelled to file this Motion to obtain the information necessary for it to meaningfully investigate the potential claims and events referenced herein.

33. Pursuant to Local Rule 2004-1(b), the Committee's undersigned counsel certifies that the Committee conferred with counsel for the Debtors regarding the requested production of documents and the timing of such production.

34. This Motion is filed to ensure that the Relevant Parties are compelled to make complete productions of documents responsive to the Committee's requests and enable the Committee to perform an appropriate investigation in the exercise of its fiduciary duties in the expedited timeframe required by these cases.

35. Under these circumstances, the matters requested in this Motion are appropriate and within the scope of Bankruptcy Rule 2004.

## RESERVATION OF RIGHTS

36. The Committee reserves its right to amend, modify, and/or supplement this Motion and the Subpoenas at any time. Notwithstanding anything contained in this Motion, nothing herein shall be construed as a waiver of any rights of the Committee.

37. The Committee reserves all rights to request, pursuant to Bankruptcy Rule 2004 or otherwise, additional documents or examination upon review of the documents produced in connection with this Motion or otherwise.

## NOTICE

38. Notice of this Motion will be provided to: (i) counsel to the Debtors; (ii) counsel, if any, for each of to the Relevant Parties; (iii) the office of the United States Trustee for the District of Delaware; (iv) counsel for the Special Committee; and (v) any party requesting notice under Bankruptcy Rule 2002. The Committee submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court grant the Motion and enter the Proposed Order attached hereto as **Exhibit A** and grant the Committee such further relief as is just and appropriate.

Dated: April 24, 2026

**MORRIS JAMES LLP**

*/s/ Samantha L. Rodriguez*
Eric J. Monzo (DE Bar No. 5214)
Tara C. Pakrouh (DE Bar No. 6192)
Siena B. Cerra (DE Bar No. 7290)
Samantha L. Rodriguez (DE Bar No. 7524)
3205 Avenue North Blvd., Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Email: emonzo@morrisjames.com
tpakrouh@morrisjames.com
scerra@morrisjames.com
srodriguez@morrisjames.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*