# EXHIBIT B

## Subpoenas

# Schedule 1

## Subpoena - D&Os

## DEFINITIONS

The following terms used in this subpoena (the "Subpoena") shall have the following meanings in addition to any other meaning they may have, and the definitions set forth herein shall apply regardless of whether the defined term is capitalized:

1. "***All***," "***each***," and "***any***" shall be construed as encompassing "each and every", "any and all", and "any one".

2. "***And***" and "***or***" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. "***Bankruptcy Code***" means the Title 11 of the United States Code.

4. "***Budget***" means the proposed budget underlying the Third Interim Cash Collateral Order [D.I. 225].

5. "***Celsius***" means Celsius Network Ltd.

6. "***Celsius Notes***" means the two promissory notes entered into by the Debtors and Celsius on or about June 14, 2024, which outline the parameters by which the Debtors would pay $3,602,140.82 upfront with the remaining $12,651,011.70 paid over a period, as more fully outlined in the Debtors' pleadings.

7. "***Chapter 11 Cases***" means the chapter 11 cases filed by the Debtors in the United States Bankruptcy Court for the District of Delaware (jointly administered under Case Number: 26-10371 (TMH)).

8. "***Communication***" is used in its broadest sense and includes, but is not limited to, any transmission or exchange of information between two or more persons, whether orally, in writing, or by electronic means. This includes without limitation any conversation or discussion

by means of letter, note, memorandum, inter-office correspondence, telephone, telegraph, telex, telecopies, cable, data processors, or any other medium. For the avoidance of doubt, the term "Communication" expressly includes electronic mail messages, text messages, chat messages, social media posts, and messages sent via mobile messaging applications (including, but not limited to, iMessage, WhatsApp, Slack, Signal, Zoom, Teams, and Telegram). The term "Communication" is not limited to internal Communications but includes Communications between the Debtors and third parties and Communications between or among third parties. For further avoidance of doubt, all Communications fall within the scope of the definition of "Document."

9. "***Concerning***," "***regarding***," or "***relating to***" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, negotiating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

10. "***Customer Assets***" means all digital assets, including but not limited to, bitcoin, fiat, ethereum, stablecoin, and other digital assets, deposited on the Debtors' platform, originally placed in customer's wallets, and all other forms of assets originating from a customer or that a customer had a property interest in.

11. "***D&O***" means director and officer.

12. "***Debtors***" or "***BlockFills***" means Reliz Technology Group Holdings Inc., Reliz Technologies LLC, Reliz LTD, and Reliz CI LTD.

13. "***Debtors' Former Employees***" means John Divine; Ray Nasser; and other former employees of the Debtors.

14. ***"Digital Asset Lending Agreement***" means that agreement entered into by the Debtors and Celsius on December 3, 2019.

15. "***Document(s)***" means all writings, audio recordings and videos of any nature whatsoever (including, specifically, all drafts), whether originals or copies, including all non-identical copies (whether different from the original because of notes made on or attached to them or otherwise), whether drafts, preliminary, proposed or final versions, whether printed, recorded, produced or reproduced by any other mechanical or electronic process, whether written or produced by hand, within Your possession, custody or control, including without limitation, contracts, agreements, arrangements, understandings, Communications, correspondence, records, reports, studies, memoranda (including memoranda of telephone, personal or intra-office conversations and memoranda of conferences, notes, advertisements, notices, facsimile Communications), Phone Records, Videoconferencing Records, diaries, forecasts, accountants' work papers, graphs, summaries, lists, tabulations, charts, diagrams, blueprints, tables, indices, pictures, recordings, tapes, charges, accounts, minutes, press releases, stenographic, handwritten or any other notes, projections, working papers, checks, check stubs, receipts, or any other document or writings of whatever description, including, without limitation, e-mails, instant messages, text messages, ESI or other electronic chats or messages and any information contained in any computer or memory system, although not yet printed out, or any material underlying, supporting or used in the preparation of any such documents.

16. "***ESI***" or "***Electronically Stored Information***" means information or data that is generated, received, processed, and recorded by computers and other electronic devices, and

includes, without limitation, system metadata (e.g., author, recipient, file creation date, file modification date) and user-generated metadata (e.g., spreadsheet formulas). "ESI" further includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) message logs from Google Chat, AOL Instant Messenger, Facebook, Twitter, WhatsApp, Telegram, and similar programs, (iv) audio and video files, (v) internal (intranet) or external websites, and (vi) activity listings of electronic mail receipts and/or transmittals. "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) Facebook, Instagram or other social media, (ii) in an active file on a computer network, an individual computer's hard drive or in a Cloud storage facility, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, and (v) on a smart phone or personal digital assistant. "ESI" also includes Documents, containers and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

17. *"**First Day Declaration**"* means *the Declaration of Mark Renzi in Support of Chapter 11 Petition and First Day Motions, filed by the Debtors on March 15, 2026*, at D.I. 3.

18. "***Identify***" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information to satisfy Federal Rule of Civil Procedure 33(d).

19. "***Including***," "***include***," or "***includes***" shall mean "including, without limitation."

20. "***Person***" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

21. "***Petition Date***" means the Chapter 11 Cases filed by the Debtors on March 15, 2026.

22. *"**Phone Records**"* mean all Documents, including telephone bills, recordings, transcripts, call summaries, telephone logs, and/or invoices for telephone conferencing services, that identify the date, time, duration, participants, telephone numbers, and/or proposed or actual subject matter of any telephone call.

23. "***Reflecting***" means constituting, embodying, memorializing, representing, or containing in any manner.

24. "***Request***" means any request for the production of documents set forth herein.

25. "***You***" and "***Your***" means the recipient of these Requests or Subpoena and any affiliate, representative, agent, or employee of the same.

## INSTRUCTIONS

1. Unless otherwise indicated in a particular Request, the date range of these Requests shall be January 1, 2022 through the date of the response hereto.

2. Documents shall be produced as they have been kept in the ordinary course of business. In this respect, the file folder in which the documents are contained is deemed an integral part of the document and shall also be produced. You are specifically requested to produce any excel spreadsheets in native format.

3. The singular shall include the plural and the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

4. If any Document is withheld, in whole or in part, on the basis of privilege, the producing party shall provide a proper privilege log at the time of the document production.

5. These Requests extend to all documents in a producing party's possession, custody and/or control, or in the possession, custody or control of persons or entities under the producing party's control, whether such documents were created or prepared by the producing party. The terms "possession," "custody," and "control" mean possession, custody or control, or rights to possession, custody or control, of documents by producing party, including Documents in the possession of any attorneys, without limitation, and documents in the custody, possession or control of any of the producing party's accountants, advisers, representatives and/or other agents of same.

6. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

7. Each reference to a natural person shall be deemed to include that person's agents, attorneys, representatives and any other person who acted or purported to act on that person's behalf.

8. In responding to these Requests, which are continuing in nature, the producing party shall produce all responsive documents in their possession, custody and/or control and shall promptly supplement and/or correct its responses if the producing party comes into possession, custody or control of additional documents, or learns or determines additional information, after the service of its response.

9. If any portion of any Document is responsive to any Request(s), the entire Document, including the attachments, disclosures, and/or exhibits must be produced.

10. No attached Documents should be separated from each other.

11. To the extent that You deem or consider any Request to be ambiguous, You must set forth the matter deemed ambiguous and the construction You adopted to respond to the Request.

12. If, after a reasonable and thorough investigation using due diligence, the producing party is unable to furnish a document or part thereof because a document is not available to the producing party, the producing party shall provide a list of each document so lost, destroyed or otherwise unavailable, together with the following information: (a) date or origin; (b) brief description of such document; (c) author of the document; (d) date upon which the document was lost or destroyed; and (e) brief statement of the manner in which such document was lost or destroyed.

13. Electronic data should be produced with all native files and metadata intact, in full-text searchable format. Any responsive, electronically stored data shall be converted/processed to TIFF files and Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files. Documents must be produced with load files necessary to load such documents onto Relativity. Images should be single-page TIFF files and file names cannot contain embedded spaces. The text and metadata of emails and the attachments, and native file document collections should be extracted and provided in a .DAT file. Searchable text of the entire document must be provided for every record, at the document level, and extracted text must be provided for documents that originated in electronic format.

14. If there are no documents responsive to a category in this Request, so state in writing.

15. The producing party shall follow all deadlines and procedures under applicable law. Objecting to a portion of a Request does not relieve the producing party of the duty to respond to those parts of the Request to which the producing party does not object.

## REQUESTS

1. All Documents and Communications between You and actual and potential investors of BlockFills.

2. All Documents and Communications regarding Your employment and/or relationship with the Debtors.

3. All Documents and Communications regarding regulatory requirements to operate Debtors' business operations.

4. All Documents and Communications related to the interpretation of customer contracts and agreements.

5. All Documents and Communications related to Customer Assets.

6. All Documents and Communications relating to any insolvency opinions, whether formal or informal, or other analyses with respect to solvency, rendered with respect to the Debtors.

7. All Documents relating to audited financials for each Debtor entity.

8. All Documents and Communications related to the Digital Asset Lending Agreement.

9. All Documents and Communications between You and customers.

10. All Documents and Communications related to the business practices of the Debtors.

11. All Documents and Communications regarding the Debtors' marketing materials.

12. All Documents and Communications related to draft and final board materials, minutes, or presentations.

13. All Documents and Communications between You and other D&Os or Debtors' Former Employees.

14. All financial statements, including balance sheets and profit and loss statements, whether audited or unaudited, and any related spreadsheets, statements, calculations, or projections, of the Debtors or of any of them, collectively or separately, for any date or period of time between March 15, 2022, and the Petition Date.

15. All documents reflecting any purchases or other acquisitions by the Debtors of any mining equipment, at any time from January 1, 2021 to the Petition Date.

16. All documents reflecting any sales, assignments, gifts or other transfers by the Debtors of any mining equipment, at any time from January 1, 2021 to the Petition Date.

17. All financial statements, including balance sheets and profit and loss statements, whether audited or unaudited, and any related spreadsheets, statements, calculations, or projections, of any of the following nondebtor affiliates, with respect to any date or period of time between January 1, 2025 and the Petition Date:

a. Reliz Technologies LLC, a Wyoming limited liability company;
b. Basis Group Holdings, Inc., an entity with its offices in Chicago, Illinois;
c. Basis Capital Markets UK Limited, a United Kingdom entity located in London;
d. Blockfils Digital Markets Ltd., a Cayman Islands entity;
e. Cerus Digital Master Fund SPC, a Cayman Islands entity;
f. Cerus Digital Offshore Fund SPC, a Cayman Islands entity; and
g. Cerus Digital Asset Management LLC, an Illinois limited liability company.

18. All documents concerning or reflecting (a) any sales, assignments, gifts or other transfers by the Debtors, at any time from January 1, 2021 to the Petition Date, of any

cryptocurrency or other controllable electronic record (CER) that had been transferred from a customer account to a commingled account controlled by one or more of the Debtors, and (b) the disposition of any property received by the Debtors or any of them pursuant to any such sale, exchange or transfer.

19. All marketing materials, website content, customer presentations, account opening documentation, and Communications that made representations to customers regarding asset custody, segregation of customer funds, safety of deposits, or protection of customer assets.

20. All Documents and Communications with accountants or auditors engaged by the Debtors.

21. All wallet addresses controlled by or associated with any of the Debtors, including hot, cold, omnibus, and operational wallets.

22. All Documents reflecting the custody arrangements for digital assets, including any third-party custodial agreements, multi-signature authorization protocols, key management procedures, and disaster recovery plans.

**TOPICS FOR EXAMINATION**

1. The facts and circumstances surrounding Your position with the Debtors' or position on the Debtors' board of directors, including Communications regarding same.

2. The facts and circumstances related to the Debtors' Budget, including Communications regarding same.

3. The facts and circumstances described in the First Day Declaration, including Documents and Communications regarding same.

4. All Communications between You and Celsius related to, among other things, the Debtors' sale process, cash collateral, and/or Term Sheet, whether on behalf of You or another person.

5. The facts and circumstances related to the potential misuses of company or customer accounts, conflicts of interest, and conduct by management that was improper or inconsistent with company representations to third parties, including Communications regarding same.

6. The facts and circumstances related to discussions with D&Os or Debtors' Former Employees.

# Schedule 2

## Subpoena – Prepetition Lenders

## DEFINITIONS

The following terms used in this subpoena (the "Subpoena") shall have the following meanings in addition to any other meaning they may have, and the definitions set forth herein shall apply regardless of whether the defined term is capitalized:

1. "***All***," "***each***," and "***any***" shall be construed as encompassing "each and every", "any and all", and "any one".

2. "***And***" and "***or***" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. "***Bankruptcy Code***" means the Title 11 of the United States Code.

4. "***Celsius***" means Celsius Network Ltd.

5. "***Celsius Notes***" means the two promissory notes entered into by the Debtors and Celsius on or about June 14, 2024, which outline the parameters by which the Debtors would pay $3,602,140.82 upfront with the remaining $12,651,011.70 paid over a period, as more fully outlined in the Debtors' pleadings.

6. "***Chapter 11 Cases***" means the chapter 11 cases filed by the Debtors in the United States Bankruptcy Court for the District of Delaware (jointly administered under Case Number: 26-10371 (TMH)).

7. "***Communication***" is used in its broadest sense and includes, but is not limited to, any transmission or exchange of information between two or more persons, whether orally, in writing, or by electronic means. This includes without limitation any conversation or discussion by means of letter, note, memorandum, inter-office correspondence, telephone, telegraph, telex, telecopies, cable, data processors, or any other medium. For the avoidance of doubt, the term

"Communication" expressly includes electronic mail messages, text messages, chat messages, social media posts, and messages sent via mobile messaging applications (including, but not limited to, iMessage, WhatsApp, Slack, Signal, Zoom, and Teams). The term "Communication" is not limited to internal Communications but includes Communications between the Debtors and third parties and Communications between or among third parties. For further avoidance of doubt, all Communications fall within the scope of the definition of "Document."

8. "***Concerning***," "***regarding***," or "***relating to***" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, negotiating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

9. "***Customer Assets***" means all digital assets, including but not limited to, bitcoin, fiat, ethereum, stablecoin, and other digital assets, deposited on the Debtors' platform, originally placed in customer's wallets, and all other forms of assets originating from a customer or that a customer had a property interest in.

10. "***D&O***" means director and officer.

11. "***Debtors***" or "***BlockFills***" means Reliz Technology Group Holdings Inc., Reliz Technologies LLC, Reliz LTD, and Reliz CI LTD.

12. "***Debtors' Former Employees***" means John Divine; Ray Nasser; and other former employees of the Debtors.

13. ***"Digital Asset Lending Agreement***" means that agreement entered into by the Debtors and Celsius on December 3, 2019.

14. "***Document(s)***" means all writings, audio recordings and videos of any nature whatsoever (including, specifically, all drafts), whether originals or copies, including all non-identical copies (whether different from the original because of notes made on or attached to them or otherwise), whether drafts, preliminary, proposed or final versions, whether printed, recorded, produced or reproduced by any other mechanical or electronic process, whether written or produced by hand, within Your possession, custody or control, including without limitation, contracts, agreements, arrangements, understandings, Communications, correspondence, records, reports, studies, memoranda (including memoranda of telephone, personal or intra-office conversations and memoranda of conferences, notes, advertisements, notices, facsimile Communications), Phone Records, Videoconferencing Records, diaries, forecasts, accountants' work papers, graphs, summaries, lists, tabulations, charts, diagrams, blueprints, tables, indices, pictures, recordings, tapes, charges, accounts, minutes, press releases, stenographic, handwritten or any other notes, projections, working papers, checks, check stubs, receipts, or any other document or writings of whatever description, including, without limitation, e-mails, instant messages, text messages, ESI or other electronic chats or messages and any information contained in any computer or memory system, although not yet printed out, or any material underlying, supporting or used in the preparation of any such documents.

15. "***ESI***" or "***Electronically Stored Information***" means information or data that is generated, received, processed, and recorded by computers and other electronic devices, and includes, without limitation, system metadata (e.g., author, recipient, file creation date, file modification date) and user-generated metadata (e.g., spreadsheet formulas). "ESI" further

includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) message logs from Google Chat, AOL Instant Messenger, Facebook, Twitter, WhatsApp, Telegram, and similar programs, (iv) audio and video files, (v) internal (intranet) or external websites, and (vi) activity listings of electronic mail receipts and/or transmittals. "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) Facebook, Instagram or other social media, (ii) in an active file on a computer network, an individual computer's hard drive or in a Cloud storage facility, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, and (v) on a smart phone or personal digital assistant. "ESI" also includes Documents, containers and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

16. "***First Day Declaration***" means the Declaration of Mark Renzi in Support of Chapter 11 Petition and First Day Motions, filed by the Debtors on March 15, 2026, at D.I. 3.

17. "***Identify***" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information to satisfy Federal Rule of Civil Procedure 33(d).

18. "***Including***," "***include***," or "***includes***" shall mean "including, without limitation."

19. "***Person***" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

20. "***Petition Date***" means the Chapter 11 Cases filed by the Debtors on March 15, 2026.

21. "***Phone Records***" mean all Documents, including telephone bills, recordings, transcripts, call summaries, telephone logs, and/or invoices for telephone conferencing services, that identify the date, time, duration, participants, telephone numbers, and/or proposed or actual subject matter of any telephone call.

22. "***Reflecting***" means constituting, embodying, memorializing, representing, or containing in any manner.

23. "***Request***" means any request for the production of documents set forth herein.

24. "***You***" and "***Your***" means Celsius.

## INSTRUCTIONS

1. Unless otherwise indicated in a particular Request, the date range of these Requests shall be January 1, 2022 through the date of the response hereto.

2. Documents shall be produced as they have been kept in the ordinary course of business. In this respect, the file folder in which the documents are contained is deemed an integral part of the document and shall also be produced. You are specifically requested to produce any excel spreadsheets in native format.

3. The singular shall include the plural and the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

4. If any Document is withheld, in whole or in part, on the basis of privilege, the producing party shall provide a proper privilege log at the time of the document production.

5. These Requests extend to all documents in a producing party's possession, custody and/or control, or in the possession, custody or control of persons or entities under the producing party's control, whether such documents were created or prepared by the producing party. The

terms “possession,” “custody,” and “control” mean possession, custody or control, or rights to possession, custody or control, of documents by producing party, including Documents in the possession of any attorneys, without limitation, and documents in the custody, possession or control of any of the producing party’s accountants, advisers, representatives and/or other agents of same.

6. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

7. Each reference to a natural person shall be deemed to include that person’s agents, attorneys, representatives and any other person who acted or purported to act on that person’s behalf.

8. In responding to these Requests, which are continuing in nature, the producing party shall produce all responsive documents in their possession, custody and/or control and shall promptly supplement and/or correct its responses if the producing party comes into possession, custody or control of additional documents, or learns or determines additional information, after the service of its response.

9. If any portion of any Document is responsive to any Request(s), the entire Document, including the attachments, disclosures, and/or exhibits must be produced.

10. No attached Documents should be separated from each other.

11. To the extent that You deem or consider any Request to be ambiguous, You must set forth the matter deemed ambiguous and the construction You adopted to respond to the Request.

12. If, after a reasonable and thorough investigation using due diligence, the producing party is unable to furnish a document or part thereof because a document is not available to the producing party, the producing party shall provide a list of each document so lost, destroyed or otherwise unavailable, together with the following information: (a) date or origin; (b) brief description of such document; (c) author of the document; (d) date upon which the document was lost or destroyed; and (e) brief statement of the manner in which such document was lost or destroyed.

13. Electronic data should be produced with all native files and metadata intact, in full-text searchable format. Any responsive, electronically stored data shall be converted/processed to TIFF files and Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files. Documents must be produced with load files necessary to load such documents onto Relativity. Images should be single-page TIFF files and file names cannot contain embedded spaces. The text and metadata of emails and the attachments, and native file document collections should be extracted and provided in a .DAT file. Searchable text of the entire document must be provided for every record, at the document level, and extracted text must be provided for documents that originated in electronic format.

14. If there are no documents responsive to a category in this Request, so state in writing.

15. The producing party shall follow all deadlines and procedures under applicable law. Objecting to a portion of a Request does not relieve the producing party of the duty to respond to those parts of the Request to which the producing party does not object.

**REQUESTS**

1. All Documents or Communications relating to any financial reporting, analysis, or presentations generated by the Debtors.

2. All Documents and Communications between You and the Debtors, D&Os, and/or Former Employees.

3. All Documents and Communication regarding any agreement(s) entered into between You and one or more of the Debtors.

4. All Documents and Communications relating to any insolvency opinions, whether formal or informal, or other analyses with respect to solvency, rendered with respect to the Debtors.

5. All Documents relating to audited financials for each Debtor entity.

6. All Documents relating to any financial reporting, analysis, or presentations generated by the Debtors.

7. All Documents and Communications related to the business practices of the Debtors.

8. All Documents supporting any alleged security interest in the Debtors' assets.

9. All Documents and Communications supporting any alleged claims against the Debtors.

10. All financial statements, including balance sheets and profit and loss statements, whether audited or unaudited, and any related spreadsheets, statements, calculations, or

projections, of the Debtors or of any of them, collectively or separately, for any date or period of time between March 15, 2022, and the Petition Date.

11. All Documents reflecting any purchases or other acquisitions by the Debtors of any mining equipment, at any time from January 1, 2021 to the Petition Date.

12. All Documents reflecting any sales, assignments, gifts or other transfers by the Debtors of any mining equipment, at any time from January 1, 2021 to the Petition Date.

13. All financial statements, including balance sheets and profit and loss statements, whether audited or unaudited, and any related spreadsheets, statements, calculations, or projections, of any of the following nondebtor affiliates, with respect to any date or period of time between January 1, 2025 and the Petition Date:

a. Reliz Technologies LLC, a Wyoming limited liability company;
b. Basis Group Holdings, Inc., an entity with its offices in Chicago, Illinois;
c. Basis Capital Markets UK Limited, a United Kingdom entity located in London;
d. Blockfils Digital Markets Ltd., a Cayman Islands entity;
e. Cerus Digital Master Fund SPC, a Cayman Islands entity;
f. Cerus Digital Offshore Fund SPC, a Cayman Islands entity; and
g. Cerus Digital Asset Management LLC, an Illinois limited liability company.

14. All Documents concerning or reflecting (a) any sales, assignments, gifts or other transfers by the Debtors, at any time from January 1, 2021 to the Petition Date, of any cryptocurrency or other controllable electronic record (CER) that had been transferred from a customer account to a commingled account controlled by one or more of the Debtors, and (b) the disposition of any property received by the Debtors or any of them pursuant to any such sale, exchange or transfer.

15. All Documents and Communications between You and any D&O or Debtors' Former Employees.

16. All loan agreements, credit facilities, promissory notes, security agreements, guarantees, and related Documents and Communications concerning any loans, advances, or extensions of credit to or from the Debtors, including all term sheets, amendments, default notices, forbearance agreements, and correspondence regarding negotiation, structuring, performance, defaults, or disputes from three (3) years prior to the petition date.

17. All Documents and Communications concerning the Celsius arbitration, including the arbitration decision, pleadings, evidence submitted, settlement discussions, and any internal Communications regarding the structuring of the underlying transaction, potential liability exposure, or advice received from counsel or other advisors.

## TOPICS FOR EXAMINATION

1. The facts and circumstances surrounding any agreements between You and the Debtors, including all amendment thereto.

2. The facts and circumstances described in the First Day Declaration, including Documents and Communications regarding same.

3. The facts and circumstances related to the status of any loan or financing agreement between You and the Debtors.

4. The facts and circumstances related to any legal dispute between You and the Debtors.

5. The facts and circumstances related to discussions between You and D&Os and/or the Debtors' Former Employees.

# Schedule 3

## First Requests – Former Employees

## DEFINITIONS

The following terms used in this subpoena (the "Subpoena") shall have the following meanings in addition to any other meaning they may have, and the definitions set forth herein shall apply regardless of whether the defined term is capitalized:

1. "***All***," "***each***," and "***any***" shall be construed as encompassing "each and every", "any and all", and "any one".

2. "***And***" and "***or***" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. "***Bankruptcy Code***" means the Title 11 of the United States Code.

4. "***Celsius***" means Celsius Network Ltd.

5. "***Celsius Notes***" means the two promissory notes entered into by the Debtors and Celsius on or about June 14, 2024, which outline the parameters by which the Debtors would pay $3,602,140.82 upfront with the remaining $12,651,011.70 paid over a period, as more fully outlined in the Debtors' pleadings.

6. "***Chapter 11 Cases***" means the chapter 11 cases filed by the Debtors in the United States Bankruptcy Court for the District of Delaware (jointly administered under Case Number: 26-10371 (TMH)).

7. "***Communication***" is used in its broadest sense and includes, but is not limited to, any transmission or exchange of information between two or more persons, whether orally, in writing, or by electronic means. This includes without limitation any conversation or discussion by means of letter, note, memorandum, inter-office correspondence, telephone, telegraph, telex, telecopies, cable, data processors, or any other medium. For the avoidance of doubt, the term

"Communication" expressly includes electronic mail messages, text messages, chat messages, social media posts, and messages sent via mobile messaging applications (including, but not limited to, iMessage, WhatsApp, Slack, Signal, Zoom, and Teams). The term "Communication" is not limited to internal Communications but includes Communications between the Debtors and third parties and Communications between or among third parties. For further avoidance of doubt, all Communications fall within the scope of the definition of "Document."

8. "***Concerning***," "***regarding***," or "***relating to***" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, negotiating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

9. "***Customer Assets***" means all digital assets, including but not limited to, bitcoin, fiat, ethereum, stablecoin, and other digital assets, deposited on the Debtors' platform, originally placed in customer's wallets, and all other forms of assets originating from a customer or that a customer had a property interest in.

10. "***D&O***" means director and officer.

11. "***Debtors***" or "***BlockFills***" means Reliz Technology Group Holdings Inc., Reliz Technologies LLC, Reliz LTD, and Reliz CI LTD.

12. "***Debtors' Former Employees***" means John Divine; Ray Nasser; and other former employees of the Debtors.

13. ***"Digital Asset Lending Agreement***" means that agreement entered into by the Debtors and Celsius on December 3, 2019.

14. "***Document(s)***" means all writings, audio recordings and videos of any nature whatsoever (including, specifically, all drafts), whether originals or copies, including all non-identical copies (whether different from the original because of notes made on or attached to them or otherwise), whether drafts, preliminary, proposed or final versions, whether printed, recorded, produced or reproduced by any other mechanical or electronic process, whether written or produced by hand, within Your possession, custody or control, including without limitation, contracts, agreements, arrangements, understandings, Communications, correspondence, records, reports, studies, memoranda (including memoranda of telephone, personal or intra-office conversations and memoranda of conferences, notes, advertisements, notices, facsimile Communications), Phone Records, Videoconferencing Records, diaries, forecasts, accountants' work papers, graphs, summaries, lists, tabulations, charts, diagrams, blueprints, tables, indices, pictures, recordings, tapes, charges, accounts, minutes, press releases, stenographic, handwritten or any other notes, projections, working papers, checks, check stubs, receipts, or any other document or writings of whatever description, including, without limitation, e-mails, instant messages, text messages, ESI or other electronic chats or messages and any information contained in any computer or memory system, although not yet printed out, or any material underlying, supporting or used in the preparation of any such documents.

15. "***ESI***" or "***Electronically Stored Information***" means information or data that is generated, received, processed, and recorded by computers and other electronic devices, and includes, without limitation, system metadata (e.g., author, recipient, file creation date, file modification date) and user-generated metadata (e.g., spreadsheet formulas). "ESI" further

includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) message logs from Google Chat, AOL Instant Messenger, Facebook, Twitter, WhatsApp, Telegram, and similar programs, (iv) audio and video files, (v) internal (intranet) or external websites, and (vi) activity listings of electronic mail receipts and/or transmittals. "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) Facebook, Instagram or other social media, (ii) in an active file on a computer network, an individual computer's hard drive or in a Cloud storage facility, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, and (v) on a smart phone or personal digital assistant. "ESI" also includes Documents, containers and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

16. "***First Day Declaration***" means the *Declaration of Mark Renzi in Support of Chapter 11 Petition and First Day Motions, filed by the Debtors* on March 15, 2026, at D.I. 3.

17. "***Identify***" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information to satisfy Federal Rule of Civil Procedure 33(d).

18. "***Including***," "***include***," or "***includes***" shall mean "including, without limitation."

19. "***Person***" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

20. "***Petition Date***" means the Chapter 11 Cases filed by the Debtors on March 15, 2026.

21. "***Phone Records***" mean all Documents, including telephone bills, recordings, transcripts, call summaries, telephone logs, and/or invoices for telephone conferencing services, that identify the date, time, duration, participants, telephone numbers, and/or proposed or actual subject matter of any telephone call.

22. "***Reflecting***" means constituting, embodying, memorializing, representing, or containing in any manner.

23. "***Request***" means any request for the production of documents set forth herein.

24. "***You***" and "***Your***" means the recipient of this Subpoena.

## INSTRUCTIONS

1. Unless otherwise indicated in a particular Request, the date range of these Requests shall be January 1, 2022 through the date of the response hereto.

2. Documents shall be produced as they have been kept in the ordinary course of business. In this respect, the file folder in which the documents are contained is deemed an integral part of the document and shall also be produced. You are specifically requested to produce any excel spreadsheets in native format.

3. The singular shall include the plural and the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

4. If any Document is withheld, in whole or in part, on the basis of privilege, the producing party shall provide a proper privilege log at the time of the document production.

5. These Requests extend to all documents in a producing party's possession, custody and/or control, or in the possession, custody or control of persons or entities under the producing party's control, whether such documents were created or prepared by the producing party. The

terms "possession," "custody," and "control" mean possession, custody or control, or rights to possession, custody or control, of documents by producing party, including Documents in the possession of any attorneys, without limitation, and documents in the custody, possession or control of any of the producing party's accountants, advisers, representatives and/or other agents of same.

6. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, members, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

7. Each reference to a natural person shall be deemed to include that person's agents, attorneys, representatives and any other person who acted or purported to act on that person's behalf.

8. In responding to these Requests, which are continuing in nature, the producing party shall produce all responsive documents in their possession, custody and/or control and shall promptly supplement and/or correct its responses if the producing party comes into possession, custody or control of additional documents, or learns or determines additional information, after the service of its response.

9. If any portion of any Document is responsive to any Request(s), the entire Document, including the attachments, disclosures, and/or exhibits must be produced.

10. No attached Documents should be separated from each other.

11. To the extent that You deem or consider any Request to be ambiguous, You must set forth the matter deemed ambiguous and the construction You adopted to respond to the Request.

12. If, after a reasonable and thorough investigation using due diligence, the producing party is unable to furnish a document or part thereof because a document is not available to the producing party, the producing party shall provide a list of each document so lost, destroyed or otherwise unavailable, together with the following information: (a) date or origin; (b) brief description of such document; (c) author of the document; (d) date upon which the document was lost or destroyed; and (e) brief statement of the manner in which such document was lost or destroyed.

13. Electronic data should be produced with all native files and metadata intact, in full-text searchable format. Any responsive, electronically stored data shall be converted/processed to TIFF files and Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files. Documents must be produced with load files necessary to load such documents onto Relativity. Images should be single-page TIFF files and file names cannot contain embedded spaces. The text and metadata of emails and the attachments, and native file document collections should be extracted and provided in a .DAT file. Searchable text of the entire document must be provided for every record, at the document level, and extracted text must be provided for documents that originated in electronic format.

14. If there are no documents responsive to a category in this Request, so state in writing.

**15.** The producing party shall follow all deadlines and procedures under applicable law. Objecting to a portion of a Request does not relieve the producing party of the duty to respond to those parts of the Request to which the producing party does not object.

**REQUESTS**

1. All Documents and Communications regarding Your employment and/or relationship with the Debtors.

2. All Documents and Communications regarding the drafting and amendment of customer contracts between the Debtors and potential and actual customers.

3. All Documents and Communications related to the interpretation of customer contracts and agreements.

4. All Documents and Communications related to the drafting of the terms and conditions of BlockFills.

5. All Documents related to any customer complaint regarding the Debtors.

6. All Documents relating to audited financials for each Debtor entity.

7. All Documents and Communications related to the Digital Asset Lending Agreement.

8. All Documents and Communications between You and any potential or actual customer.

9. All Documents related to the use of Customer Assets for Debtors' operational expenses and any other activities.

10. All Documents and Communications related to the business practices of the Debtors.

11. All financial statements, including balance sheets and profit and loss statements, whether audited or unaudited, and any related spreadsheets, statements, calculations, or projections, of the Debtors or of any of them, collectively or separately, for any date or period of time between March 15, 2022, and the Petition Date.

12. All Documents reflecting any purchases or other acquisitions by the Debtors of any mining equipment, at any time from January 1, 2021 to the Petition Date.

13. All Documents reflecting any sales, assignments, gifts or other transfers by the Debtors of any mining equipment, at any time from January 1, 2021 to the Petition Date.

14. All financial statements, including balance sheets and profit and loss statements, whether audited or unaudited, and any related spreadsheets, statements, calculations, or projections, of any of the following nondebtor affiliates, with respect to any date or period of time between January 1, 2025 and the Petition Date:

a. Reliz Technologies LLC, a Wyoming limited liability company;
b. Basis Group Holdings, Inc., an entity with its offices in Chicago, Illinois;
c. Basis Capital Markets UK Limited, a United Kingdom entity located in London;
d. Blockfils Digital Markets Ltd., a Cayman Islands entity;
e. Cerus Digital Master Fund SPC, a Cayman Islands entity;
f. Cerus Digital Offshore Fund SPC, a Cayman Islands entity; and
g. Cerus Digital Asset Management LLC, an Illinois limited liability company.

15. All Documents concerning or reflecting (a) any sales, assignments, gifts or other transfers by the Debtors, at any time from January 1, 2021 to the Petition Date, of any cryptocurrency or other controllable electronic record (CER) that had been transferred from a customer account to a commingled account controlled by one or more of the Debtors, and (b) the disposition of any property received by the Debtors or any of them pursuant to any such sale, exchange or transfer.

16. All marketing materials, website content, customer presentations, account opening documentation, and Communications that made representations to customers regarding asset custody, segregation of customer funds, safety of deposits, or protection of customer assets.

17. All Documents and Communications with accountants or auditors engaged by the Debtors.

18. All wallet addresses controlled by or associated with any of the Debtors, including hot, cold, omnibus, and operational wallets.

19. All Documents reflecting the custody arrangements for digital assets, including any third-party custodial agreements, multi-signature authorization protocols, key management procedures, and disaster recovery plans.

20. All Documents and Communications related to assets held in trust or custodial agreements for assets.

21. All Documents and Communications related to risk assessment of Debtors' operations.

**TOPICS FOR EXAMINATION**

1. The facts and circumstances surrounding your employment with the Debtors, including Communications regarding same.

2. The facts and circumstances related to the potential misuses of company or customer accounts, conflicts of interest, and conduct by management that was improper or inconsistent with company representations to third parties, including Communications regarding same.

3. The facts and circumstances described in the First Day Declaration, including Documents and Communications regarding same.

4. The facts and circumstances related to Your Communications with actual or potential customers.