**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RELIZ TECHNOLOGY GROUP HOLDINGS INC., *et al.*,[1] | Case No. 26-10371 (TMH) |
| | (Jointly Administered) |
| Debtors. | |

**AMENDED JOINT CHAPTER 11 PLAN OF RELIZ
TECHNOLOGY GROUP HOLDINGS INC. AND ITS DEBTOR AFFILIATES**

David R. Hurst (I.D. No. 3743)
Andrew A. Mark (I.D. No. 6861)
**MCDERMOTT WILL & SCHULTE LLP**
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
Email: dhurst@mcdermottlaw.com
         amark@mcdermottlaw.com

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
R. Ethan Dover (admitted *pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
Email:  dazman@mcdermottlaw.com
          jbevans@mcdermottlaw.com
          edover@mcdermottlaw.com

Gregg Steinman (admitted *pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
333 SE 2nd Ave Suite 4500
Miami, Florida 33131
Telephone: (305) 358-3500
Email:  gsteinman@mcdermottlaw.com

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Reliz Technology Group Holdings Inc. (6265); Reliz Technologies LLC (1968); Reliz LTD (N/A); and Reliz CI LTD (N/A).  The Debtors' service address is 401 West Ontario St., Suite 400, Chicago, IL 60654.

**TABLE OF CONTENTS**

Page

Introduction .................................................................................................................................. 1

**Article I. Defined Terms, Rules of Interpretation, Computation of Time, Governing Law, and
Other References** ........................................................................................................ 1

    A.    Defined Terms .................................................................................................... 1
    B.    Rules of Interpretation ...................................................................................... 13
    C.    Computation of Time ......................................................................................... 14
    D.    Governing Law .................................................................................................. 14
    E.    Reference to Monetary Figures .......................................................................... 14
    F.    Reference to the Post Effective Date Debtors or the GUC Trust ....................... 14
    G.    Nonconsolidated Plan ....................................................................................... 14

**Article II. Administrative and Priority Claims** ..................................................................... 15

    A.    Administrative Claims ....................................................................................... 15
    B.    Professional Fee Claims ..................................................................................... 16
    C.    Priority Tax Claims ........................................................................................... 17

**Article III. Classification, Treatment, and Voting of Claims and Interests** ...................... 17

    A.    Classification of Claims and Interests ............................................................... 17
    B.    Summary of Classification ................................................................................. 17
    C.    Treatment of Classes of Claims and Interests ................................................... 18
    D.    Special Provision Governing Unimpaired Claims .............................................. 22
    E.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes .............. 23
    F.    Subordinated Claims .......................................................................................... 23
    G.    Intercompany Interests ....................................................................................... 23
    H.    Controversy Concerning Impairment ................................................................ 23
    I.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
        Code .................................................................................................................. 23

**Article IV. Provisions for Implementation of the Plan** .......................................................... 24

    A.    Vesting of Assets ............................................................................................... 24
    B.    Sources of Consideration for Plan Distributions ............................................... 24
    C.    Authority to Act and Deliver Definitive Documents ......................................... 24
    D.    Release of Liens ................................................................................................. 25
    E.    Corporate Action ............................................................................................... 25
    F.    Corporate Existence ........................................................................................... 25
    G.    Dissolution of the Board of the Debtors ............................................................ 26
    H.    Effectuating Documents; Further Transactions ................................................. 26
    I.    Cryptocurrency Rebalancing and Distributions ................................................ 26
    J.    Vesting of Causes of Action in GUC Trust ....................................................... 27
    K.    Preservation of Vested Causes of Action ........................................................... 27
    L.    Post Effective Date Debtors ............................................................................... 28
    M.    GUC Trustee ...................................................................................................... 28
    N.    The GUC Trust .................................................................................................. 28
    O.    Corporate Existence and Dissolution ................................................................ 35

i

P.    Cancellation of Notes, Instruments, Certificates, and Other Documents ........................ 35
Q.    Effectuating Documents; Further Transactions .................................................... 35
R.    Section 1146(a) Exemption................................................................. 36
S.    Preservation of Rights of Action................................................................. 36
T.    Closing the Chapter 11 Cases .................................................................. 37

**Article V. Treatment of Executory Contracts and Unexpired Leases ...................................37**
A.    Assumption and Rejection of Executory Contracts and Unexpired Leases...................... 37
B.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
Leases ........................................................................................ 37
C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ...................... 38
D.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed .................... 38
E.    Insurance Policies ........................................................................... 39
F.    Reservation of Rights......................................................................... 40
G.    Nonoccurrence of Effective Date............................................................. 40

**Article VI. Provisions Governing Distributions .........................................................40**
A.    Timing and Calculation of Amounts to Be Distributed .................................... 40
B.    Rights and Powers of Distribution Agent .................................................. 41
C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ...................... 41
D.    Compliance Matters.......................................................................... 42
E.    Claims Paid or Payable by Third Parties .................................................. 43
F.    Setoffs and Recoupment ................................................................... 43
G.    Allocation between Principal and Accrued Interest.......................................... 44

**Article VII. Procedures for Resolving Disputed, Contingent, and Unliquidated Claims...................44**
A.    Disputed Claims Process ..................................................................... 44
B.    Objections to Claims.......................................................................... 45
C.    Estimation of Claims ......................................................................... 45
D.    No Distributions Pending Allowance ....................................................... 45
E.    Distributions After Allowance ............................................................... 46
F.    No Interest................................................................................... 46
G.    Adjustment to Claims without Objection ................................................... 46
H.    Time to File Objections to Claims.......................................................... 46
I.    Disallowance of Claims ...................................................................... 46
J.    Amendments to Proofs of Claim............................................................ 46

**Article VIII. Effect of Confirmation of the Plan .........................................................47**
A.    Releases by the Debtors....................................................................... 47
B.    Releases by Holders of Claims and Interests................................................ 48
C.    Exculpation................................................................................... 48
D.    Injunction.................................................................................... 49
E.    Release of Liens.............................................................................. 49
F.    Protection against Discriminatory Treatment ............................................... 50
G.    Document Retention ......................................................................... 50
H.    Reimbursement or Contribution ............................................................ 50
I.    Term of Injunctions or Stays................................................................. 50

**Article IX. Conditions Precedent to the Effective Date**.................................................................**50**

    A.    Conditions Precedent to the Effective Date ...................................................... 50
    B.    Waiver of Conditions Precedent ..................................................................... 51
    C.    Effect of Non-Occurrence of Conditions to Effective Date............................. 51

**Article X. Modification, Revocation, or Withdrawal of the Plan** ......................................**51**

    A.    Modification of Plan ...................................................................................... 51
    B.    Effect of Confirmation on Modifications ....................................................... 52
    C.    Substantial Consummation ............................................................................ 52
    D.    Revocation or Withdrawal of Plan................................................................. 52

**Article XI. Retention of Jurisdiction** .......................................................................................**52**

**Article XII. Miscellaneous Provisions** ....................................................................................**54**

    A.    Immediate Binding Effect.............................................................................. 54
    B.    Additional Documents ................................................................................... 54
    C.    Payment of Statutory Fees ............................................................................. 55
    D.    Dissolution of Statutory Committees.............................................................. 55
    E.    Reservation of Rights..................................................................................... 55
    F.    Successors and Assigns ................................................................................. 55
    G.    Post-Effective Date Service of Documents..................................................... 55
    H.    Entire Agreement; Controlling Document...................................................... 57
    I.    Plan Supplement ........................................................................................... 57
    J.    Non-Severability............................................................................................ 57
    K.    Votes Solicited in Good Faith........................................................................ 58
    L.    Waiver or Estoppel ....................................................................................... 58

**INTRODUCTION**

Reliz Technology Group Holdings Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (each, a "Debtor" and, collectively, the "Debtors") propose this joint plan (the "Plan") for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**

**DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

**A.      Defined Terms**

Capitalized terms used in this Plan have the meanings ascribed to them below.

1.      "*Acquired Assets*" has the meaning ascribed to it in the Asset Purchase Agreement.

2.      "*Administrative Claim*" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or after the Petition Date and on or prior to the Effective Date pursuant to section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' business and (b) Allowed Professional Fee Claims.

3.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims (other than requests for payment of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code), which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

5.      "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or a Claim for which a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed under the

1

Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court, or (d) a Claim as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; *provided that*, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed (or, for Claims listed in the Schedules for which no Proof of Claim has been timely Filed, the Schedules have not been amended with respect to such Claim) by the Claims Objection Bar Date or such other period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed (or the Schedules amended), such Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. A Proof of Claim Filed after and subject to the Bar Date or a request for payment of an Administrative Claim Filed after and subject to the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

6. "*Asset Purchase Agreement*" means any definitive purchase agreement for all or substantially all of the Debtors' assets, including all exhibits and schedules thereto, as may be amended, modified, or supplemented in accordance with the terms thereof.

7. "*Assumed Liabilities*" has the meaning ascribed to it in the Asset Purchase Agreement.

8. "*Ballot*" means the ballot, approved pursuant to the Disclosure Statement Order, distributed to Holders of Impaired Claims entitled to vote on the Plan, on which such Holders desiring to vote shall indicate acceptance or rejection of the Plan and, as applicable, make any additional settlement and treatment elections contained in such ballot.

9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended.

10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over the Chapter 11 Cases, including to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

11. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

12. "*Bar Date*" means the applicable deadline by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan.

13.     "*Bar Date Order*" means the *Order (I) Establishing Bar Dates to File Proofs of Claim; (II) Approving Procedures for Filing Proofs of Claim; (III) Approving Form and Manner of Notice of Bar Dates; and (IV) Granting Related Relief* [Docket No. 176].

14.     "*Bidding Procedures*" means the *Bidding Procedures*, attached as Exhibit 1 to the Bidding Procedures Order, as may be amended or modified pursuant to its terms.

15.     "*Bidding Procedures Order*" means the *Order (I) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (II) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (III) Approving Assumption and Assignment Procedures, (IV) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 177].

16.     "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

17.     "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

18.     "*Cash Collateral Order*" means the *Final Order (I) Authorizing Postpetition Use of Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Party; and (III) Granting Related Relief* [Docket No. 379].

19.     "*Causes of Action*" mean any action, Claim, cross-claim, third-party claim, damage, judgment, cause of action, controversy, demand, right, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, interest, guaranty, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, in contract or in tort, at law or in equity, or pursuant to any other theory of law in accordance with applicable law.  For the avoidance of doubt, "Causes of Action" includes:  (a) any right of setoff, counterclaim, or recoupment and any claim arising from any contract or for breach of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any right to object to or otherwise contest Claims or Interests; (d) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (e) any claim or defense, including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

20.     "*Celsius*" means Celsius Network Ltd. and any of its Affiliates.

21.     "*Celsius Claim*" means the Claim of Celsius on account of the Celsius Note.

22.     "*Celsius Note*" means that certain promissory note between Celsius and TopCo, Reliz Tech, Reliz LTD and non-Debtors Reliz Technologies LLC (a Wyoming limited liability company), Basis Group Holdings Inc., Basis Capital Markets UK Limited, BlockFils Digital Markets LTD, Cerus Digital Master Fund SPC, Cerus Digital Offshore Fund SPC, and Cerus Digital Asset Management LLC,  entered into on June 14, 2024 with a maturity date of March 31, 2026 (the other Celsius promissory note, with a maturity date of September 30, 2024, having been timely paid off and satisfied).

23.     "*Celsius Secured Claim*" means any portion of the Celsius Claim that is a Secured Claim.

3

24.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated cases filed for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

25.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

26.     "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a)(i) with respect to Administrative Claims (other than Professional Fee Claims and Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code), 60 days after the Administrative Claims Bar Date or (ii) with respect to all other Claims (other than Professional Fee Claims), 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the GUC Trust, as applicable, as approved by an order of the Bankruptcy Court for objecting to such Claims.

27.     "*Claims Register*" means the official register of Claims against the Debtors maintained by the Clerk of the Bankruptcy Court or the Claims, Noticing, and Solicitation Agent.

28.     "*Claims, Noticing, and Solicitation Agent*" means Kurtzman Carson Consultants, LLC dba Verita Global, in its capacity as the claims, noticing, and solicitation agent in the Chapter 11 Cases for the Debtors and any successors appointed by an order of the Bankruptcy Court.

29.     "*Class*" means a class of Claims against or Interests in the Debtors as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

30.     "*Committee*" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

31.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

32.     "*Confirmation Date*" means the date on which Confirmation occurs.

33.     "*Confirmation Hearing*" means the hearing before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code at which the Debtors will seek Confirmation of the Plan.

34.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Debtors.

35.     "*Consummation*" means the occurrence of the Effective Date.

36.     "*Convenience Claim*" means any General Unsecured Claim valued at less than or equal to the Convenience Claim Threshold; *provided,* that Holders of Allowed General Unsecured Claims that exceed the Convenience Claim Threshold may irrevocably elect through the Convenience Claim Election to have their Claims reduced to the Convenience Claim Threshold and treated as Convenience Claims.  No Holder of an Allowed General Unsecured Claim that is filed in an unliquidated amount may elect to be treated as a Convenience Claim.

37.     "*Convenience Claim Election*" means the election through a Ballot, in accordance with the procedures set forth in the Disclosure Statement Order, pursuant to which Holders of General Unsecured

4

Claims, whose claims exceed the Convenience Claim Threshold, irrevocably elect to have their Claims reduced to the Convenience Claim Threshold and treated as Convenience Claims; *provided*, any General Unsecured Claim cannot be the subject of a partial election (*i.e.,* the Claim must be in either Class 5 or Class 6A, 6B, 6C, and 6D (as applicable) in its entirety), and no Holder of a General Unsecured Claim that is filed in an unliquidated amount may elect to be treated as a Convenience Claim.

38.     "*Convenience Claim Threshold*" means $45,000.

39.     "*Convenience Class Recovery Pool*" means a pool of $850,000.

40.     "*Cryptocurrency*" means a digital currency, digital asset, or crypto asset in which transactions are verified and records maintained by a decentralized system using cryptography, rather than by a centralized authority, including stablecoins, digital coins and tokens, such as security tokens, utility tokens and governance tokens.

41.     "*Cure*" or "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

42.     "*D&O Carriers*" means the insurance carriers of the D&O Liability Insurance Policies.

43.     "*D&O Liability Insurance Policies*" means all unexpired insurance policies maintained by the Debtors, the GUC Trust, or the Estates as of the Effective Date that have been issued (or provide coverage) regarding directors', managers', officers', members', and trustees' liability (including any "tail policy"), and all agreements, documents, or instruments relating thereto.

44.     "*Debtors*" means, collectively, each of the following: Reliz Technology Group Holdings Inc.; Reliz Technologies LLC; Reliz LTD; and Reliz CI LTD.

45.     "*Definitive Documents*" means:  (a) the Plan (and any and all exhibits, annexes, and schedules thereto); (b) the Confirmation Order; (c) the Disclosure Statement and the other Solicitation Materials; (d) the Disclosure Statement Order; (e) all pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related orders); (f) the Plan Supplement; (g) the Asset Purchase Agreement (if any); and (h)  any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably desired or necessary to consummate and document the transactions contemplated by the Sale Transaction (including any exhibits, amendments, modifications, or supplements made from time to time thereto).

46.     "*Disclosure Statement*" means the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Reliz Technology Group Holdings Inc. and Its Debtor Affiliates*, as may be amended, supplemented, or otherwise modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan.

47.     "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

48.     "*Disputed*" means, with respect to any Claim, a Claim that (a)(i) is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or a Claim for which a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or a

5

Final Order of the Bankruptcy Court) or (ii) is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; and (b) is not (i) Allowed or (ii) disallowed under the Plan, the Bankruptcy Code, or a Final Order.

49.   "*Disputed Claims Reserve*" means an appropriate reserve in an amount to be determined by the GUC Trust for distributions on account of Disputed Claims that are subsequently Allowed after the Effective Date, in accordance with Article VII.E hereof.

50.   "*Distributable Assets*" means, as of the Effective Date, (i) all Distributable Cryptocurrency and (ii) cash on hand after (x) payment in full of, or reserve for, all Allowed Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims, Other Priority Claims, Convenience Claims and the Celsius Secured Claim in accordance with the terms of the Plan and (y) funding in cash of the GUC Trust Reserve.

51.   "*Distributable TopCo Assets*" means all Distributable Assets belonging to TopCo.

52.   "*Distributable Reliz Tech Assets*" means all Distributable Assets belonging to Reliz Tech.

53.   "*Distributable Reliz CI Assets*" means all Distributable Assets belonging to Reliz CI.

54.   "*Distributable Reliz LTD Assets*" means all Distributable Assets belonging to Reliz LTD.

55.   "*Distributable Cryptocurrency*" means all Cryptocurrency held by the Debtors or that is otherwise property of any Debtor on the Effective Date.

56.   "*Distribution Agent*" means, as applicable, the Debtors, the Post Effective Date Debtors, the GUC Trust, or any Entity or Entities designated by the Debtors or the GUC Trust to make or to facilitate distributions that are to be made pursuant to the Plan, Definitive Documents, and/or Asset Purchase Agreement.

57.   "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the GUC Trust, on or after the Effective Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

58.   "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against the Debtors are eligible to receive distributions under the Plan, which date shall be the Effective Date, or such other date as is determined by the Debtors or designated by an order of the Bankruptcy Court.

59.   "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors declare the Plan effective.

60.   "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

61.   "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtor after the Petition Date through and including the Effective Date.

6

62.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) each of the Debtors and their current directors and officers; (b) the Committee, and each of the members thereof, solely in their capacity as such; (c) each Professional employed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with sections 327, 363, or 1103 of the Bankruptcy Code; and (d) the Independent Director.

63.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

64.    "*Existing Equity Interests*" means any Interest in TopCo existing immediately prior to the occurrence of the Effective Date.

65.    "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

66.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing, respectively, in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee, or, with respect to the filing of a Proof of Claim or Proof of Interest, file, filed, or filing, respectively, with the Claims, Noticing, and Solicitation Agent.

67.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

68.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal that has been or may be taken or any petition for certiorari or any motion for a new trial, reargument, reconsideration, or rehearing that has been or may be made or filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the motion for a new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order (if any such motion has been or may be granted), or have otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

69.    "*General Unsecured Claim*" means any Claim against any of the Debtors that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Secured Tax Claim; (d) a Priority Tax Claim; (e) an Other Priority Claim; (f) an Other Secured Claim; (g) a Celsius Secured Claim; (h) a Convenience Claim; (i) an Intercompany Claim; or (j) a Section 510(b) Claim.

70.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

71.    "*Government Bar Date*" means the applicable deadline by which Proofs of Claim by a Governmental Unit must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan.

72.    "*GUC Trust*" means the trust established on the Effective Date to, among other things, commence, litigate and settle the Vested Causes of Action and make distributions pursuant to the terms of the Plan and the Liquidation Trust Agreement.

73.    "*GUC Trust Assets*" means (a) the GUC Trust Reserve, (b) the Vested Causes of Action, and (c) any of the Debtors' assets that are not transferred to the Purchaser.

74.    "*GUC Trust Beneficiaries*" means the Holders of Allowed Claims in Classes 6A, 6B, 6C, and 6D, which are entitled to receive GUC Trust Interests pursuant to Article III of the Plan.

75.    "*GUC Trust Budget*" means the budget to fund the GUC Trust, which will be included in the Plan Supplement.

76.    "*GUC Trust Expenses*" means all actual and necessary costs and expenses incurred by the GUC Trust or GUC Trustee in connection with carrying out the obligations of the GUC Trust pursuant to the terms of the Plan and the Liquidation Trust Agreement.

77.    "*GUC Trust Interests*" means the beneficial interests in the GUC Trust issued as of the Effective Date to all GUC Trust Beneficiaries in accordance with the Plan, including the (a) Series A GUC Trust Interests, (b) Series B GUC Trust Interests, (c) Series C GUC Trust Interests, and (d) Series D GUC Trust Interests.

78.    "*GUC Trust Oversight Committee*" means the oversight committee tasked with overseeing the GUC Trust in accordance with the Plan and the Liquidation Trust Agreement which shall consist of no more than three members to be selected by the Committee after consultation with the Debtors.

79.    "*GUC Trust Reserve*" means the amount set forth in the GUC Trust Budget to fund the GUC Trust.

80.    "*GUC Trustee*" means the individual designated in the Plan Supplement in accordance with the terms of the Plan to serve as trustee of the GUC Trust subject to the terms of the Liquidation Trust Agreement.

81.    "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

82.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

83.    "*Independent Director*" means Matthew Kahn, solely in his capacity as disinterested director of TopCo.

84.    "*Insurance Policies*" means any and all insurance policies entered into by the Debtors, including the D&O Liability Insurance Policies.

85.    "*Intercompany Claim*" means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor.

86.    "*Intercompany Interest*" means, other than an Interest in TopCo, an Interest in one Debtor held by another Debtor or a Debtor's Affiliate.

87.    "*Interest*" means any equity security (as such term is defined in section 101(16) of the Bankruptcy Code) including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profit interests of an Entity in a Debtor, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights,

8

convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in a Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, and including any Claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to the foregoing.

88.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001 and the rules and regulations promulgated thereunder, as applicable to the Chapter 11 Cases.

89.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

90.     "*Liquidation Trust Agreement*" means the agreement to be included in the Plan Supplement which shall govern the rights, duties, obligations, and governance of the GUC Trust, the GUC Trustee, the GUC Trust Beneficiaries, the GUC Trust Oversight Committee, and all other matters relating to the GUC Trust in accordance with the Plan.

91.     "*Other Priority Claim*" means any Claim against a Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

92.     "*Other Secured Claim*" means any Secured Claim that is not a Secured Tax Claim or the Celsius Secured Claim.

93.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

94.     "*Petition Date*" means March 15, 2026.

95.     "*Plan*" means this joint chapter 11 plan and all exhibits, supplements, appendices, and schedules hereto, as may be altered, amended, supplemented, or otherwise modified from time to time in accordance with Article X.A hereof, including the Plan Supplement (as altered, amended, supplemented, or otherwise modified from time to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

96.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may thereafter be amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Plan, the Bankruptcy Code, the Bankruptcy Rules, and applicable law), to be Filed by the Debtors no later than seven days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court, and additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement. The Plan Supplement may include the following, as applicable:  (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the Liquidation Trust Agreement; (d) documents identifying the individual to serve as GUC Trustee to the extent not identified in the Liquidation Trust Agreement; (e) documents identifying the individuals who will serve on the GUC Trust Oversight Committee; (f)  the GUC Trust Budget; and (g) any additional documents necessary to effectuate or that is contemplated by the Plan.

97.     "*Post Effective Date Debtors*" means, collectively, all Debtors and successors thereto after the Effective Date that are not acquired by the Purchaser (if any) or any of its Affiliates.

98.    "*Priority Tax Claim*" means any Claim of a Governmental Unit against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

99.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, unless otherwise indicated.

100.    "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and/or 363 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

101.    "*Professional Fee Claim*" means any Administrative Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

102.    "*Professional Fee Escrow Account*" means an escrow account funded by the Debtors with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

103.    "*Professional Fee Escrow Amount*" means the aggregate amount of quarterly U.S. Trustee fees, Professional Fee Claims, and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services in connection with the Chapter 11 Cases on or before the Effective Date projected to be outstanding as of the anticipated Effective Date, which shall be estimated pursuant to the method set forth in Article II.B of the Plan.

104.    "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

105.    "*Proof of Interest*" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

106.    "*Purchaser*" means shall have the meaning ascribed to such term in the Asset Purchase Agreement.

107.    "*Reinstated*" or "*Reinstatement*" means, with respect to Claims, that the Claim shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

108.    "*Related Party*" or "*Related Parties*" means, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

109.    "*Released Parties*" means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Committee, and each of the members thereof in their capacity as such; (c) the

10

Purchaser, if any, and only in Purchaser's capacity as such; and (d) the Related Parties of each of the foregoing Entities in clauses (a) through (c) of this definition to the fullest extent permitted by law; *provided that*, in each case, to the extent an Entity is entitled to vote on the Plan, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases described in Article VIII.B hereof or (y) timely objects to the releases contained in Article VIII.B hereof and such objection is not resolved before Confirmation; *provided further that*, any such inclusion of the foregoing Entities in clauses (a) through (d) of this definition is expressly subject to and dependent on the outcome of the ongoing Special Committee Investigation.

110. "*Releasing Parties*" means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Committee, and each of the members thereof; (c) any Purchaser and each of its Related Parties to the extent Purchaser is able to bind such Related Parties; (d) all Holders of Claims that vote to accept the Plan and who do not affirmatively opt out of the releases provided for in this Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in this Plan; (e) all Holders of Claims who vote to reject this Plan and who do not affirmatively opt out of the releases provided for in this Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in this Plan; and (f) to the maximum extent permitted by Law, each Related Party of each Entity in clause (a) through (e); *provided that*, in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.B hereof; or (y) timely objects to the releases contained in Article VIII.B hereof and such objection is not resolved before Confirmation.

111. "*Reliz CI*" means Debtor, Reliz CI Ltd.

112. "*Reliz CI Recoveries*" means any proceeds arising from (a) Vested Causes of Action belonging to Reliz CI and (b) any other assets belonging to Reliz CI that are not transferred to the Purchaser.

113. "*Reliz LTD Recoveries*" means any proceeds arising from (a) Vested Causes of Action belonging to Reliz LTD and (b) any other assets belonging to Reliz LTD that are not transferred to the Purchaser.

114. "*Reliz Tech*" means Debtor, Reliz Technologies LLC.

115. "*Reliz Tech Recoveries*" means any proceeds arising from (a) Vested Causes of Action belonging to Reliz Techs and (b) any other assets belonging to Reliz Tech that are not transferred to the Purchaser.

116. "*Sale Transaction*" means the sale of all or substantially all of the Debtors' assets pursuant to the Bidding Procedures, or any combination of sales of subsets of the Debtors' assets, whether through the Bidding Procedures or private sales.

117. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means a schedule that may be Filed as part of the Plan Supplement of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors or GUC Trust, as applicable, in accordance with the Plan.

118. "*Schedule of Retained Causes of Action*" means any and all Causes of Action of the Debtors that, for the avoidance of doubt, are not released, waived, settled, compromised, or transferred pursuant to the Plan. For the avoidance of doubt, any failure to specifically list any Causes of Action on the Schedule of Retained Causes of Action shall not be deemed a waiver or admission that any such Cause of Action does not constitute a Vested Causes of Action.

11

119. "*Schedules*" means, collectively, the schedules of assets and liabilities and statement of financial affairs Filed by each of the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements may have been or may be amended, modified, or supplemented from time to time.

120. "*SEC*" means the United States Securities and Exchange Commission.

121. "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code.

122. "*Secured*" means, when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a secured Claim.

123. "*Secured Claim*" means a Claim that is Secured.

124. "*Secured Tax Claim*" means any Secured Claim against a Debtor that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

125. "*Securities Act*" means the U.S. Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

126. "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

127. "*Series A GUC Trust Interests*" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of the TopCo Recoveries pursuant to Article III of the Plan.

128. "*Series B GUC Trust Interests*" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of the Reliz Tech Recoveries pursuant to Article III of the Plan.

129. "*Series C GUC Trust Interests*" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of the Reliz CI Recoveries pursuant to Article III of the Plan.

130. "*Series D GUC Trust Interests*" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of the Reliz LTD Recoveries pursuant to Article III of the Plan.

131. "*Solicitation Materials*" means all solicitation materials with respect to the Plan.

132. "*Special Committee*" means the special committee established at TopCo, comprised of the Independent Director.

133. "*Special Committee Investigation*" means that certain investigation undertaken by the Special Committee into certain historical transactions and conduct.

134.    "*TopCo*" means, Debtor Reliz Technology Group Holdings Inc., a Delaware corporation.

135.    "*TopCo Recoveries*" means any proceeds arising from (a) Vested Causes of Action belonging to TopCo and (b) any other assets belonging to TopCo that are not transferred to the Purchaser.

136.    "*U.S. Trustee*" means the Office of the United States Trustee for Region 3.

137.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim to a Holder that, after the expiration of 180 days after the Effective Date, has not:  (a) accepted a distribution, (b) given notice to the GUC Trust of an intent to accept a particular distribution, (c) responded to the Debtors' or GUC Trust's requests for information necessary to facilitate a particular distribution, or (d) taken any other action necessary to facilitate such distribution.

138.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

139.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

140.    "*Vested Causes of Action*" means the Causes of Action that will vest in the GUC Trust pursuant to Article IV.N of the Plan, including, but not limited to, those Causes of Action enumerated on the Schedule of Retained Causes of Action, which shall be included in the Plan Supplement and in all respects consistent with the terms of the Asset Purchase Agreement.

141.    "*Voting Deadline*" means June 15, 2026, or such other date established by the Disclosure Statement Order or other order of the Bankruptcy Court.

## B.    Rules of Interpretation

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (2) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (3) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (4) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed, shall mean that document, schedule, or exhibit, as it may thereafter have been or may thereafter be validly amended, amended and restated, supplemented, or otherwise modified; (5) unless otherwise specified, any reference to an Entity as a Holder of a Claim or Interest, includes that Entity's successors and assigns; (6) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (7) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) unless otherwise specified, all references to

statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases; (14) any effectuating provisions may be interpreted by the Debtors or the GUC Trust in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (15) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (18) the use of "include" or "including" is without limitation unless otherwise stated.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); *provided that*, corporate, limited liability company, or partnership governance matters relating to the Debtors or the GUC Trust, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or the GUC Trust, as applicable.

## E.    Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## F.    Reference to the Post Effective Date Debtors or the GUC Trust

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Post Effective Date Debtors or to the GUC Trust mean the Post Effective Date Debtors and the GUC Trust, as applicable, to the extent the context requires.

## G.    Nonconsolidated Plan

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

### A.    Administrative Claims

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims or subject to 11 U.S.C. § 503(b)(1)(D), unless previously Filed, requests for payment of Allowed Administrative Claims (other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code) must be Filed and served on the GUC Trust pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed satisfied as of the Effective Date without the need for any objection from the GUC Trust or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  Objections to such requests, if any, must be Filed and served on the GUC Trust and the requesting party by the Claims Objection Bar Date for Administrative Claims.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order of the Bankruptcy Court.

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive an amount of Cash equal to the amount of the unpaid or unsatisfied portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the GUC Trust, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Objections to requests for payment of such Administrative Claims, if any, must be Filed with the Bankruptcy Court and served on the GUC Trust and the requesting Holder no later than the Claims Objection Bar Date for Administrative Claims.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

**B.      Professional Fee Claims**

      1.      Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred on or before the Effective Date must be Filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules. The GUC Trust shall pay Professional Fee Claims in Cash to such Professionals in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided that*, the Debtors' and the GUC Trust's obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

      2.      Professional Fee Escrow Account

No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and the U.S. Trustee and for no other Entities until all quarterly U.S. Trustee fees and all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the U.S. Trustee or to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the GUC Trust. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, and all U.S. Trustee quarterly fees plus statutory interest, if any, have been paid in full, any remaining funds held in the Professional Fee Escrow Account shall be turned over to the GUC Trust without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

      3.      Professional Fee Escrow Amount

The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided* that the GUC Trust shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

      4.      Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Confirmation Date the GUC Trust may, in the ordinary course of business and without any further notice to or action, order, or approval

16

of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the GUC Trust.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Post Effective Debtors and GUC Trust may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## C.        Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.

## CLASSIFICATION, TREATMENT,
## AND VOTING OF CLAIMS AND INTERESTS

## A.        Classification of Claims and Interests

The Plan constitutes a separate Plan for each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

## B.        Summary of Classification

A summary of the classification of Claims against and Interests in each Debtor pursuant to the Plan is set forth in the following chart.  The Plan constitutes a separate chapter 11 plan for each of the Debtors, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims or Interests shall be treated as set forth in Article III.E hereof.  Voting tabulations for recording acceptances or rejections of the Plan will be conducted on a Debtor-by-Debtor basis as set forth above.[2]

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

---

[2]    The Debtors reserve the right to separately classify Claims or Interests to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable law.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Celsius Secured Claim | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Entitled to Vote |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6A | General Unsecured Claims Against TopCo | Impaired | Entitled to Vote |
| 6B | General Unsecured Claims Against Reliz Tech | Impaired | Entitled to Vote |
| 6C | General Unsecured Claims Against Reliz CI | Impaired | Entitled to Vote |
| 6D | General Unsecured Claims Against Reliz LTD | Impaired | Entitled to Vote |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 9 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 10 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**C.    Treatment of Classes of Claims and Interests**

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or GUC Trust, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.  In no event shall any Holder of a Claim receive more than such Holder's Allowed amount on account of such Claim.

1.      Class 1 —Secured Tax Claims

   (d)    *Classification*:  Class 1 consists of all Secured Tax Claims.

   (e)    *Treatment*:  Each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction of such Allowed Secured Tax Claim, at the option of the GUC Trust, payment in full in Cash of such Holder's Allowed Secured Tax Claim or such other treatment rendering such Holder's Allowed Secured Tax Claim Unimpaired.

   (f)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Secured Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2 —Other Secured Claims

   (a)    *Classification*:  Class 2 consists of all Other Secured Claims.

   (b)    *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the GUC Trust, payment in full in Cash of such Holder's Allowed Other Secured Claim or such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

   (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan

3.      Class 3 — Other Priority Claims

   (a)    *Classification*:  Class 3 consists of all Other Priority Claims.

   (b)    *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, at the option of the GUC Trust, payment in full in Cash of such Holder's Allowed Other Priority Claim or such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

   (c)    *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.      Class 4 — Celsius Secured Claim

   (a)    *Classification*:  Class 4 consists of the Celsius Secured Claim.

   (b)    *Treatment*: The Holder of the Allowed Celsius Secured Claim shall receive, in full and final satisfaction of such Allowed Celsius Secured Claim, at the option of the

19

GUC Trust and subject to the terms of the Bidding Procedures Order and the Cash Collateral Order, payment in full in Cash of such Holder's Allowed Celsius Secured Claim or such other treatment rendering such Holder's Allowed Celsius Secured Claim Unimpaired, except to the extent that the Debtors and such Holder of an Allowed Celsius Secured Claim agree in writing to less favorable treatment; *provided*, the Holder of the Allowed Celsius Secured Claim shall first recover from the assets of TopCo and Reliz Tech before receiving any recovery from the assets of Reliz LTD.

    (c)    *Voting:* Class 4 is either Impaired or Unimpaired under the Plan. In the event the Holder of the Allowed Celsius Secured Claim is Unimpaired, such Holder is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Allowed Celsius Secured Claim would not be entitled to vote to accept or reject the Plan. In the event the Holder of the Allowed Celsius Secured Claim is Impaired, such Holder will be entitled to vote to accept or reject the Plan.

5.    <u>Class 5 — Convenience Claims</u>

    (a)    *Classification*: Class 5 consists of all Convenience Claims.

    (b)    *Treatment*: Each Holder of an Allowed Convenience Claim will receive, in full and final satisfaction of such Holder's Allowed Convenience Claim, such Holder's Pro Rata share of the Convenience Class Recovery Pool.

    (c)    *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

6.    <u>Class 6A —General Unsecured Claims Against TopCo</u>

    (a)    *Classification*: Class 6A consists of all General Unsecured Claims against TopCo.

    (b)    *Treatment:* Each Holder of an Allowed General Unsecured Claim against TopCo will receive, in full and final satisfaction of such Holder's General Unsecured Claim, such Holder's Pro Rata share of the Distributable TopCo Assets and the Series A GUC Trust Interests.

    (c)    *Voting*: Class 6A is Impaired under the Plan. Holders of Allowed General Unsecured Claims against TopCo in Class 6A are entitled to vote to accept or reject the Plan.

7.    <u>Class 6B —General Unsecured Claims Against Reliz Tech</u>

    (a)    *Classification*: Class 6B consists of all General Unsecured Claims against Reliz Tech.

    (b)    *Treatment:* Each Holder of an Allowed General Unsecured Claim against Reliz Tech will receive, in full and final satisfaction of such Holder's General Unsecured Claim, such Holder's Pro Rata share of the Distributable Reliz Tech Assets and the Series B GUC Trust Interests.

20

(c)     *Voting*:  Class 6B is Impaired under the Plan.  Holders of Allowed General Unsecured Claims against Reliz Tech in Class 6B are entitled to vote to accept or reject the Plan.

8.     Class 6C —General Unsecured Claims Against Reliz CI

(a)     *Classification*:  Class 6C consists of all General Unsecured Claims against Reliz CI.

(b)     *Treatment:* Each Holder of an Allowed General Unsecured Claim against Reliz CI will receive, in full and final satisfaction of such Holder's General Unsecured Claim, such Holder's Pro Rata share of the Distributable Reliz CI Assets and the Series C GUC Trust Interests.

(c)     *Voting*:  Class 6C is Impaired under the Plan.  Holders of Allowed General Unsecured Claims against Reliz CI in Class 6C are entitled to vote to accept or reject the Plan.

9.     Class 6D —General Unsecured Claims Against Reliz LTD

(a)     *Classification*:  Class 6D consists of all General Unsecured Claims against Reliz Ltd.

(b)     *Treatment:* Each Holder of an Allowed General Unsecured Claim against Reliz LTD will receive, in full and final satisfaction of such Holder's General Unsecured Claim, such Holder's Pro Rata share of the Distributable Reliz LTD Assets and the Series D GUC Trust Interests.

(c)     *Voting*:  Class 6D is Impaired under the Plan.  Holders of Allowed General Unsecured Claims against Reliz LTD in Class 6D are entitled to vote to accept or reject the Plan

10.     Class 7 — Section 510(b) Claims

(a)     *Classification*:  Class 7 consists of all Section 510(b) Claims.

(b)     *Allowance*:  Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Section 510(b) Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

(c)     *Treatment*:  Each Section 510(b) Claim will be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such 510(b) Claim.

(d)     *Voting*:  Class 7 is Impaired under the Plan.  Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders (if any) of Allowed Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

21

11.    Class 8 — Intercompany Claims

    (a)    *Classification*:  Class 8 consists of all Intercompany Claims.

    (b)    *Treatment*:  Each Allowed Intercompany Claim shall be Reinstated, distributed, contributed, set off, settled, cancelled or released, or otherwise addressed at the option of the GUC Trustee.

    (c)    *Voting*:  Holders of Intercompany Claims are either Unimpaired or Impaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code or rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

12.    Class 9 — Intercompany Interests

    (a)    *Classification*:  Class 9 consists of all Intercompany Interests.

    (b)    *Treatment*:  On the Effective Date, all Intercompany Interests shall be, at the option of the Debtors, either (a) Reinstated in accordance with Article III.G of the Plan or (b) set off, settled, addressed, distributed, contributed, merged, or cancelled.

    (c)    *Voting*:  Holders of Intercompany Interests are either Unimpaired or Impaired, and such Holders of Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code or rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

13.    Class 10 — Existing Equity Interests

    (a)    *Classification*:  Class 10 consists of all Existing Equity Interests.

    (b)    *Treatment*:  Without the need for any further corporate or limited liability company action or approval or any board of directors, board of manager, members, shareholders, or officers of any Debtor, as appliable, all Existing Equity Interests shall be cancelled, released, and extinguished without any distribution, and will be of not further force or effect, and each Holder of an Existing Equity Interest shall not receive or retain any distribution, property, or other value on account of such Existing Equity Interest.

    (c)    *Voting*:  Class 10 is Impaired under the Plan.  Holders of Existing Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

**D.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors', Post Effective Date Debtors', or the GUC Trust's rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

22

**E.      Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes**

Any Class of Claims or Interests that does not have a Holder of an allowed Claim or allowed Interest or a Claim or Interest temporarily allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**F.      Subordinated Claims**

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims against and Allowed Interests in the Debtors and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the GUC Trust reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**G.      Intercompany Interests**

To the extent Reinstated under the Plan, distributions (if any) on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience in order to maintain the Debtors' organization structure. For the avoidance of doubt, any Interest in non-Debtor subsidiaries owned by a Debtor shall continue to be owned by the applicable Post Effective Date Debtor, unless such Interest is transferred pursuant to the Sale Transaction.

**H.      Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**I.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims or Interests.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

23

## ARTICLE IV.

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

### A.   Vesting of Assets

Except as otherwise provided in the Plan, the Confirmation Order, the Asset Purchase Agreement (if any), or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the assets of the Debtors that are not transferred to the Purchaser pursuant to the Asset Purchase Agreement, if any, shall vest in the GUC Trust free and clear of all Liens, Claims, charges, or other encumbrances.

### B.   Sources of Consideration for Plan Distributions

The Debtors and GUC Trust, as applicable, will fund distributions under the Plan with (i) Cash and Cryptocurrency on hand on the Effective Date; (ii) proceeds from the sale of the Debtors' assets pursuant to the Bidding Procedures and/or Asset Purchase Agreement, if any; (iii) the revenues and proceeds of all assets of the Debtors that are not transferred or assigned to the Purchaser, and (iv) the GUC Trust Assets, including proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date; *provided*, that cash proceeds from the sale of the Debtors' assets pursuant to the Bidding Procedures shall be paid in accordance with the Bidding Procedures Order and subject to the Cash Collateral Order.

Notwithstanding anything to the contrary in the Plan or in the Asset Purchase Agreement (if any), on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Effective Date shall vest in the GUC Trust and shall be subject to administration by the GUC Trustee.

### C.   Authority to Act and Deliver Definitive Documents

On or before the Effective Date, the applicable Debtors will take any action as may be necessary or advisable to effectuate the Sale Transaction and the other transactions described in the Plan, including, as applicable:  (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Sale Transaction and the Plan, and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Sale Transaction and the Plan; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (4) the transfer or distribution of any Cryptocurrency or Cash; (5) the execution and delivery of the Liquidation Trust Agreement; (6) any transactions necessary or appropriate to form the GUC Trust; (7) such other transactions that are required to effectuate the Sale Transaction, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (8) all transactions necessary to provide for the purchase of the Acquired Assets by Purchaser under the Asset Purchase Agreement; and (9) all other actions that the applicable Entities determine to be necessary or appropriate, or that are reasonably requested by the Purchaser in accordance with the Asset Purchase Agreement, including making filings or recordings that may be required by applicable law.

24

The Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Sale Transaction.

**D.      Release of Liens**

Except as otherwise expressly provided herein or in the Confirmation Order, on the Effective Date, all Liens on any property of any Debtors or Post Effective Date Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors or Post Effective Date Debtors  shall be automatically discharged and released; *provided*, that the release of Liens shall not apply to any Lien on the proceeds of the sale of the Debtors assets in accordance with the Bidding Procedures unless satisfied.

**E.      Corporate Action**

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (a) consummation of the Sale Transaction; and (b) all other actions contemplated under or necessary to implement the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors, Post Effective Date Debtors, of the GUC Trust, as applicable, before, on, or after the Effective Date involving the corporate structure of the Debtors, the Post Effective Date Debtors, or the GUC Trust, and any corporate action required by the Debtors, the Post Effective Date Debtors, or the GUC Trust in connection with the Plan or corporate structure of the Debtors, Post Effective Date Debtors, or GUC Trust shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors, the Post Effective Date Debtors, of the GUC Trust.  Before, on, or after the Effective Date, the appropriate officers of the Debtors, the Post Effective Date Debtors, or the GUC Trust, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors or Post Effective Date Debtors. The authorizations and approvals contemplated by this Article IV.E shall be effective notwithstanding any requirements under non-bankruptcy law.

**F.      Corporate Existence**

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Post Effective Date Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Post Effective Date Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

**G.     Dissolution of the Board of the Debtors**

As of the Effective Date, the existing board of directors or managers, as applicable, of each of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be deemed to have resigned without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

As of the Effective Date, the GUC Trustee shall serve as the sole shareholder of TopCo, and as the sole officer, director, and manager, as applicable, of each of the Post Effective Date Debtors.  Subject in all respects to the terms of this Plan, the GUC Trustee shall have the power and authority to take any action necessary to wind down and dissolve any of the Post Effective Date Debtors, and shall:  (a) file a certificate of dissolution for any of the Post Effective Date Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Post Effective Date Debtors under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors or Post Effective Date Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors, Post Effective Date Debtors, or their Estates for any tax incurred during the administration of such Debtor's or Post Effective Date Debtors' Chapter 11 Case, as determined under applicable tax laws.

The filing by the GUC Trustee of any of the Post Effective Date Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of the Post Effective Date Debtors or any of their affiliates.

**H.     Effectuating Documents; Further Transactions**

Prior to the Effective Date, the Debtors and, on and after the Effective Date, the Post Effective Date Debtors and the GUC Trustee, and the officers and members thereof, are authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

**I.     Cryptocurrency Rebalancing and Distributions**

Prior to the Effective Date, the Debtors shall be authorized to rebalance their Cryptocurrency portfolio to ensure that the Debtors can effectuate *pro rata* in-kind distributions of the Distributable Cryptocurrency to the extent possible and practicable according to Article III of this Plan.  Creditors entitled to receive distributions in cryptocurrency will have their claims valued in USD as of the Petition Date. Thereafter, the Debtors will determine each creditor's *pro rata* share of Distributable Assets based on the Petition Date valuation. As necessary to effectuate distributions, the Debtors or GUC Trust, as applicable, will rebalance their Cryptocurrency portfolio as of a date certain in order to effectuate in-kind distributions based on the *pro rata* calculation. The Debtors may effectuate such rebalancing by buying and selling Cryptocurrency and engaging in any other transaction necessary to accomplish such rebalancing. Creditors entitled to receive Cryptocurrency will receive Cryptocurrency in the same form as the form(s) that comprises their Claim to the extent possible and practicable. If the Debtors or Distribution Agent are unable to buy, sell, distribute, or otherwise transact with any Cryptocurrency that comprises a Claim, such Claim

26

and any distribution on such Claim will be made in Cash.[1]  The decision whether to make Distributions on account of Allowed Claims in cryptocurrency or U.S. Dollars shall be in the sole discretion of the GUC Trustee in his or her business judgment.

### J.    Vesting of Causes of Action in GUC Trust

Except as otherwise provided in the Plan, or in any agreement, instrument, or other document incorporated in the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property constituting GUC Trust Assets, including all Vested Causes of Action of the Debtors (unless otherwise released, waived, compromised, settled, transferred, or discharged pursuant to the Plan), and any property acquired by any of the Debtors under the Plan shall vest in the GUC Trust, free and clear of all Liens, Claims, charges, or other encumbrances.

### K.    Preservation of Vested Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the GUC Trustee all rights to commence, prosecute, or settle, as appropriate, any and all Vested Causes of Action, whether arising before or after the Petition Date, which shall vest in the GUC Trustee pursuant to the terms of the Plan.  The GUC Trustee may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Vested Causes of Action, whether arising before or after the Petition Date, and the GUC Trustee's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The GUC Trustee may, in its reasonable business judgment, pursue such Vested Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Vested Causes of Action to the extent the GUC Trustee deems appropriate, including on a contingency fee basis.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the GUC Trustee will not pursue any and all available Causes of Action against them.  The Debtors, Post Effective Date Debtors, and the GUC Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Vested Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the GUC Trustee expressly reserves all Vested Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Vested Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The GUC Trustee reserves and shall retain the foregoing Vested Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The GUC Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Vested Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court; *provided, however,* that pursuant to Fed.

---

[1]    If a Claim is asserted in currency other than U.S. Dollars (including in digital assets or Cryptocurrency), it will be deemed converted to the equivalent U.S. Dollar value: (i) in the case of foreign currency, using the conversion rate for the applicable currency at prevailing market prices of as 4:00 p.m. (prevailing Central Time) on the Petition Date; and (ii) in the case of digital assets or Cryptocurrency, using the prevailing market prices listed as of 4:00 p.m. (prevailing Central Time) on the Petition Date.

R. Civ. P. 23.1, to the extent applicable through Bankruptcy Rule 7023.1, any derivative action may be settled, voluntarily dismissed, or compromised only with the Bankruptcy Court's approval.

**L.      Post Effective Date Debtors**

On and after the Effective Date, the Post Effective Date Debtors shall continue in existence for purposes of, among other things, complying with their continuing obligations under the Asset Purchase Agreement, if any.

**M.      GUC Trustee**

The GUC Trustee shall act for the Post Effective Date Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  From and after the Effective Date, the GUC Trustee shall be the sole representative of, and shall act for, the Post Effective Date Debtors.  The foregoing shall not limit the authority of the Post Effective Date Debtors or the GUC Trustee, as applicable, to continue the employment of any former manager, officer, or professional including pursuant to any transition services agreement entered into on or after the Effective Date by and between the Post Effective Date Debtors and the Purchaser.

**N.      The GUC Trust**

On the Effective Date, the GUC Trust shall be formed for the benefit of the GUC Trust Beneficiaries and each of the Debtors shall transfer the GUC Trust Assets for distribution in accordance with the terms of the Plan.  The Confirmation Order shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

1.      Establishment of a GUC Trust

Pursuant to the Liquidation Trust Agreement, the GUC Trust will be established.  The GUC Trust shall be a successor to the Debtors' rights, title, and interest to the GUC Trust Assets.  Subject to Delaware law, the GUC Trust will be charged with administering the GUC Trust Assets in accordance with the Liquidation Trust Agreement and the Plan.  The GUC Trust shall be managed by the GUC Trustee and shall be subject to the GUC Trust Oversight Committee.  For the avoidance of doubt, the GUC Trust shall not have any right or interest in any Cause of Action or Claim constituting an Acquired Asset.  The GUC Trust shall be administered in a manner consistent with the SEC's published guidance on liquidating trusts.

Prior to the Effective Date, any and all of the Debtors' assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date the GUC Trust Assets shall, subject to the Liquidation Trust Agreement, be transferred to and vest in the GUC Trust.  For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to a prior order or the Plan, the GUC Trust specifically retains and reserves the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the GUC Trust and the GUC Trustee shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Liquidation Trust Agreement, compromise or settle any GUC Trust Assets transferred to the GUC Trust.  On and after the Effective Date, the GUC Trust and the GUC Trustee may, without further Bankruptcy Court approval,

commence, litigate, and settle any Vested Causes of Action or Claims relating to any GUC Trust Assets transferred to the GUC Trust or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the GUC Trust and the GUC Trustee on or after the Effective Date, except as otherwise expressly provided herein and in the Liquidation Trust Agreement. The GUC Trust shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

The GUC Trust shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the Debtors, as applicable, in any Causes of Action pending before the Bankruptcy Court or any other court that relate to a GUC Trust Asset without the need for filing any motion for such relief. On the Effective Date, the Debtors and the GUC Trustee shall execute the Liquidation Trust Agreement and shall have established the GUC Trust pursuant hereto. In the event of any conflict between the terms of this Article IV.N and the terms of the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall control.

2.      GUC Trust Assets

Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date and thereafter if additional GUC Trust Assets become available, the Debtors shall be deemed, subject to the Liquidation Trust Agreement, to have automatically transferred to the GUC Trust all of their right, title, and interest in and to all of the GUC Trust Assets, in accordance with section 1141 of the Bankruptcy Code. All such assets shall automatically vest in the GUC Trust free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth herein and the expenses of the GUC Trust as set forth herein and in the Liquidation Trust Agreement. Thereupon, the Debtors shall have no interest in or with respect to the GUC Trust Assets or the GUC Trust.

3.      Treatment of GUC Trust for Federal Income Tax Purposes; No Successor-in-Interest

The GUC Trust shall be established for the primary purpose of liquidating and distributing the GUC Trust Assets transferred to it, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the GUC Trust. Accordingly, the GUC Trustee may, in an expeditious but orderly manner, liquidate the GUC Trust Assets, make timely distributions to the GUC Trust Beneficiaries and not unduly prolong its duration. The GUC Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the GUC Trust Agreement. The record holders of beneficial interests shall be recorded and set forth in a register maintained by the GUC Trust expressly for such purpose.

The GUC Trust is intended to qualify as a "grantor trust" for federal income tax purposes to the extent reasonably practicable, with the GUC Trust Beneficiaries treated as grantors and owners of the GUC Trust. However, with respect to any of the assets of the GUC Trust that are subject to potential disputed claims of ownership or uncertain distributions, *or* to the extent "liquidating trust" treatment is otherwise unavailable, the Debtors anticipate that such assets will be subject to disputed ownership fund treatment under Section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

29

4.    Appointment of GUC Trustee

The GUC Trustee shall be selected by the Debtors, in consultation with the Committee, and shall be identified in the Plan Supplement. The appointment of the GUC Trustee shall be approved in the Confirmation Order, and the GUC Trustee's duties shall commence as of the Effective Date. The GUC Trustee shall administer the distributions to the GUC Trust Beneficiaries and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Vested Causes of Action belonging to the Estates that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan.

In accordance with the Liquidation Trust Agreement, the GUC Trustee shall serve in such capacity through the earlier of (i) the date on which the GUC Trust is dissolved in accordance with the Liquidation Trust Agreement, and (ii) the date on which a GUC Trustee resigns, is terminated, or is otherwise unable to serve; *provided*, *however*, that, in the event that a GUC Trustee resigns, is terminated, or is otherwise unable to serve, the GUC Trust Oversight Committee shall appoint a successor to serve as a GUC Trustee in accordance with the Liquidation Trust Agreement. If the GUC Trust Oversight Committee does not appoint a successor within the time periods specified in the Liquidation Trust Agreement, then the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the GUC Trust, shall approve a successor to serve as a GUC Trustee.

5.    Responsibilities of GUC Trustee

Responsibilities of the GUC Trustee shall be as identified in the Liquidation Trust Agreement and shall include, but are not limited to:

(a)    implementing the GUC Trust, and making distributions contemplated by the Plan;

(b)    marshalling or marketing for sale any of the Debtors' assets constituting GUC Trust Assets;

(c)    overseeing the accounts of the Post Effective Date Debtors and the GUC Trust and the wind down and dissolution of the Post Effective Date Debtors and the GUC Trust;

(d)    receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the GUC Trust to abandon the GUC Trust Assets, including causing the GUC Trust to invest any moneys held as GUC Trust Assets;

(e)    opening and maintaining bank accounts on behalf of or in the name of the Post Effective Date Debtors or the GUC Trust, including, in the GUC Trustee's discretion, separate bank accounts for each of the Post Effective Date Debtors;

(f)    entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or the Liquidation Trust Agreement, and to perform all obligations thereunder;

(g)    collecting and liquidating all GUC Trust Assets, including the sale of any GUC Trust Assets;

30

(h)     protecting and enforcing the rights to the GUC Trust Assets (including any Vested Causes of Action) by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(i)     investigating any GUC Trust Assets, and any other potential Vested Causes of Action;

(j)     reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(k)     seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

(l)     retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Liquidation Trust Agreement and paying the reasonable compensation thereof;

(m)     paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the GUC Trust Assets, solely out of GUC Trust Assets;

(n)     prosecuting and settling the Vested Causes of Action;

(o)     reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Vested Causes of Action;

(p)     acquiring litigation and other claims related to the Post Effective Date Debtors, and prosecuting such claims;

(q)     reviewing and compelling turnover of the Post Effective Date Debtors' or the GUC Trust's property;

(r)     calculating and making all distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan and the Liquidation Trust Agreement; *provided* that because the Plan does not substantively consolidate the Debtors' Estates, the GUC Trustee shall make distributions from the GUC Trust Assets to the holders of Claims and Interests (if applicable) against that specific Debtor;

(s)     establishing, administering, adjusting, and maintaining the GUC Trust Reserve and the Disputed Claims Reserve;

(t)     withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the GUC Trustee has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(u)     in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the GUC Trust;

(v)     making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Post Effective Date Debtors or the GUC Trust, and filing tax returns for the Post Effective Date Debtors or the GUC Trust pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Post Effective Date Debtors or the GUC Trust, as applicable; *provided, however*, the GUC Trustee shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Post Effective Date Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(w)     abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any GUC Trust Assets that the GUC Trustee determines to be too impractical to distribute or of inconsequential value;

(x)     seeking a determination of tax liability or refund under Bankruptcy Code section 505;

(y)     establishing reserves for taxes, assessments, and other expenses of administration of the Post Effective Date Debtors or the GUC Trust as may be necessary and appropriate for the proper operation of matters incident to the Post Effective Date Debtors or the GUC Trust;

(z)     paying GUC Trust Expenses;

(aa)    if the GUC Trustee deems appropriate in the GUC Trustee's sole discretion, seek to establish a bar date for filing proofs of Interest in any Post Effective Date Debtor or otherwise to determine the holders and extent of Allowed Interests in any Post Effective Date Debtor;

(bb)    purchasing and carrying all insurance policies that the GUC Trustee deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

(cc)    undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Post Effective Date Debtors', the GUC Trust's, or the GUC Trustee's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(dd)    retaining, terminating, appointing, hiring, or otherwise employees, personnel, management, and directors at any of the Debtors to the extent necessary to carry out the purposes of this Agreement and the Plan, including, without limitation, to address any disputes between the Post Effective Date Debtors;

32

(ee)    exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and the Liquidation Trust Agreement; and

(ff)    taking all other actions consistent with the provisions of the Plan and the Liquidation Trust Agreement that the GUC Trustee deems reasonably necessary or desirable to administer the Post Effective Date Debtors and the GUC Trust.

6.    <u>The GUC Trust Oversight Committee</u>

The GUC Trust Oversight Committee shall consist of those parties selected by the Committee, after consultation with the Debtors, and identified in the Plan Supplement, and which at no time shall consist of greater than three members.

The GUC Trust Oversight Committee shall have the responsibility to review and advise the GUC Trustee with respect to the liquidation and distribution of the GUC Trust Assets transferred to the GUC Trust in accordance herewith and the Liquidation Trust Agreement.  For the avoidance of doubt, in advising the GUC Trustee, the GUC Trust Oversight Committee shall maintain the same fiduciary responsibilities as the GUC Trustee.  Vacancies on the GUC Trust Oversight Committee shall be filled by a Person designated by the GUC Trustee, subject to the unanimous consent of the remaining member or members of the GUC Trust Oversight Committee.  The GUC Trustee shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the GUC Trust Oversight Committee for cause. Members of the GUC Trust Oversight Committee shall not receive any compensation for their services, however, they shall be reimbursed for all actual, necessary expenses incurred in connection with their services provided to the GUC Trust Oversight Committee.

7.    <u>Funding of GUC Trust Reserve and Expenses of GUC Trust</u>

Prior to the Effective Date, the Debtors shall establish the GUC Trust Reserve funded with Cash. The GUC Trust Expenses shall be paid from the GUC Trust Assets.

8.    <u>Insurance; Bond</u>

The GUC Trustee may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the GUC Trustee and the GUC Trust Oversight Committee under the Liquidation Trust Agreement.  Unless otherwise agreed to by the GUC Trust Oversight Committee, the GUC Trustee shall serve with a bond, the terms of which shall be agreed to by the GUC Trust Oversight Committee, and the cost and expense of which shall be paid by the GUC Trust.

9.    <u>Fiduciary Duties of the GUC Trustee</u>

Pursuant to this Plan and the Liquidation Trust Agreement, the GUC Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that will receive distributions pursuant to Plan.

10.    <u>Termination of the GUC Trust</u>

The GUC Trust will terminate on the earlier of:  (a)(i) the final liquidation, administration and distribution of the GUC Trust Assets in accordance with the terms of the Liquidation Trust Agreement and the Plan, and its full performance of all other duties and functions as set forth herein or in the Liquidation Trust Agreement and (ii) the Chapter 11 Cases of the Debtors have been closed; or (b) the GUC Trustee determines in its reasonable judgment that the GUC Trust lacks sufficient assets and financial resources,

after reasonable collection efforts, to complete the duties and powers assigned to him or her under the Plan, the Confirmation Order and/or the Liquidation Trust Agreement. After (x) the final distributions pursuant to the Plan, (y) the Filing by or on behalf of the GUC Trust of a certification of dissolution with the Bankruptcy Court, and (z) any other action deemed appropriate by the GUC Trustee, the GUC Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

11.    Liability of GUC Trustee; Indemnification

Subject to the Liquidation Trust Agreement, the GUC Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The GUC Trustee or the GUC Trust Oversight Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and may reasonably rely on the advice of counsel in connection therewith. Notwithstanding such authority, neither the GUC Trustee nor the GUC Trust Oversight Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the GUC Trustee, the GUC Trust Oversight Committee, or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or actual fraud. The GUC Trust shall indemnify and hold harmless the GUC Trust Parties (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) that such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the GUC Trust or the Plan or the discharge of their duties hereunder; *provided*, *however*, that no such indemnification will be made to such Persons for actions or omissions as a result of willful misconduct, gross negligence, or actual fraud. Persons dealing or having any relationship with the GUC Trustee shall have recourse only to the GUC Trust Assets and shall look only to the GUC Trust Assets to satisfy any liability or other obligations incurred by the GUC Trust or the GUC Trust Oversight Committee to such Person in carrying out the terms of the Liquidation Trust Agreement, and neither the GUC Trustee nor the GUC Trust Oversight Committee shall have any personal obligation to satisfy any such liability. The GUC Trustee and/or the GUC Trust Oversight Committee members shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth herein and in the Liquidation Trust Agreement, and no implied covenants or obligations shall be read into the Liquidation Trust Agreement against any of them. The GUC Trust shall promptly pay expenses reasonably incurred by the GUC Trustee, the GUC Trust Oversight Committee, their respective members, employees, employers, designees or professionals, or any of their duly designated agents or representatives (each a "GUC Trust Party" and collectively the "GUC Trust Parties") in defending, participating in, or settling any action, proceeding or investigation in which such GUC Trust Party is a party or is threatened to be made a party or otherwise is participating in connection with the Liquidation Trust Agreement or the duties, acts or omissions of the GUC Trustee or otherwise in connection with the affairs of the GUC Trust, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each GUC Trust Party hereby undertakes, and the GUC Trust hereby accepts his or her undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such exculpated party is not entitled to be indemnified therefor under the Liquidation Trust Agreement. The foregoing indemnity in respect of any GUC Trust Party shall survive the termination of such GUC Trust Party from the capacity for which they are indemnified.

12.    No Liability of the GUC Trust

On and after the Effective Date, the GUC Trust shall have no liability on account of any Claims or Interests except as set forth herein and in the Liquidation Trust Agreement. All payments and all

34

distributions made by the GUC Trustee hereunder shall be in exchange for all Claims or Interests against the Debtors.

**O.      Corporate Existence and Dissolution**

Except as otherwise provided in the Plan, each Debtor, as a Post Effective Date Debtor, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificates or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) in effect prior to the Effective Date, except to the extent such certificates or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) are amended pursuant to the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings under applicable state or federal law).

On and after the Effective Date, the Post Effective Date Debtors or the GUC Trust (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and (2) shall be deemed to have cancelled pursuant to this Plan all Interests, except those Intercompany Interests necessary to maintain the Debtors' corporate organizational structure.

**P.      Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Sale Transaction, as applicable (including, without limitation, the Definitive Documents and the Asset Purchase Agreement), all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto.

**Q.      Effectuating Documents; Further Transactions**

On and after the Effective Date, the Post Effective Date Debtors, and their directors, managers, partners, officers, authorized persons, and members thereof, and the GUC Trust and GUC Trustee are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, Definitive Documents, and Asset Purchase Agreement, if applicable, in the name of and on behalf of the Debtors, the Post Effective Date Debtors, and GUC Trust, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

35

**R.     Section 1146(a) Exemption**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the GUC Trust, the Purchaser (if any), or to any other Entity) of property under the Plan, Definitive Documents, and Asset Purchase Agreement or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the GUC Trust; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, including the Asset Purchase Agreement, shall not be subject to any stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**S.     Preservation of Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the GUC Trust shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action other than Causes of Action released, waived, settled, compromised, or transferred.  Such rights shall be preserved by the Debtors and GUC Trust and shall vest in the GUC Trust, with the GUC Trust's rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action expressly released, waived, settled, compromised, or transferred by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan or pursuant to the Asset Purchase Agreement, which shall be deemed released and waived by the Debtors and GUC Trust as of the Effective Date.

The GUC Trust may pursue such Causes of Action, as appropriate, in accordance with the best interests of the GUC Trust Beneficiaries and in accordance with the Liquidation Trust Agreement and the Plan.  **No Entity may rely on the absence of a specific reference in the Schedules of Assets and Liabilities or Statements of Financial Affairs, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the GUC Trust, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.  The GUC Trust, on behalf of the Debtors and the GUC Trust, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan.**  Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the GUC Trust, on behalf of the Debtors and GUC Trust and in accordance with the Liquidation Trust Agreement, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The GUC Trust, on behalf of the Debtors, reserves and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the GUC Trust, except as otherwise provided in the Plan, including Article VIII of the Plan. The GUC Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The GUC Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the Plan; *provided, however,* that pursuant to Fed. R. Civ. P. 23.1, to the extent applicable through Bankruptcy Rule 7023.1, any derivative action may be settled, voluntarily dismissed, or compromised only with the Bankruptcy Court's approval.

**T.      Closing the Chapter 11 Cases**

On and after the Effective Date, the GUC Trust shall be permitted to close all of the Chapter 11 Cases of the Post Effective Date Debtors except for the Chapter 11 Case of Reliz Technology Group Holdings Inc. Once such cases are closed, all contested matters relating to any of the Debtors or Post Effective Date Debtors, including objections to Claims or Interests and any adversary proceedings, may be administered and heard in the Chapter 11 Case of Reliz Technology Group Holdings Inc., irrespective of whether such Claims or Interests were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, Post Effective Date Debtors, or the GUC Trust, as applicable, under such Executory Contract or Unexpired Lease. Without limiting the general nature of the foregoing, and notwithstanding any non-bankruptcy law to the contrary, the Debtors,

37

the Post Effective Date Debtors, and GUC Trust expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

**C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Counterparties to Executory Contracts or Unexpired Leases subject to rejection under the Plan shall be served with a notice of rejection of Executory Contracts and Unexpired Leases with the Plan Supplement.  Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Claims, Noticing, and Solicitation Agent and served on the Debtors or GUC Trust, as applicable, no later than thirty days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  **Unless the Bankruptcy Court orders otherwise, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, or the GUC Trust, the Estates, or their property without the need for any objection by the GUC Trust or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed released, and be subject to the permanent injunction set forth in Article VIII.D of the Plan.**  All Allowed Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims in accordance with Article III.C of the Plan.

**D.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed**

The Debtors, the GUC Trust, or the Purchaser (if any), as applicable, shall pay Cures, if any, on the Effective Date.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the ordinary course amounts paid or proposed to be paid by the Debtors, the GUC Trust, or the Purchaser shall be dealt with in the ordinary course of business and, if needed, shall be Filed with the Claims, Noticing, and Solicitation Agent on or before thirty days after the Effective Date.  **If any counterparty to an Executory Contract or Unexpired Lease does not receive a notice of assumption and applicable cure amount, such counterparty shall have until on or before thirty days after the Effective Date to bring forth and File a request for payment of Cure.**  Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or the GUC Trust, without the need for any objection by the GUC Trust or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Any Cure shall be deemed fully satisfied and released upon payment by the Debtors or the GUC Trust or the Purchaser of the Cure in the ordinary course of business or upon and in accordance with any resolution of a Cure dispute (whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty); *provided*, *however*, that nothing herein shall prevent the GUC Trust or the Purchaser (if any), as applicable, from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure.  The GUC Trust or the Purchaser (if any) may also settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' first scheduled omnibus hearing for which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

In the event of a dispute regarding:  (1) the amount of any Cure Claim, (2) the ability of the Debtors, the Post Effective Date Debtors, the GUC Trust, Purchaser (if any), or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned, as applicable), or (3) any other matter pertaining to assumption or assignment, then any disputed Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made as soon as reasonably practicable following, and in accordance with, the entry of a Final Order of the Bankruptcy Court resolving such dispute or as may be agreed upon by the Debtors, the GUC Trust, or Purchaser (if any), as applicable, and the counterparty to the Executory Contract or Unexpired Lease, and any such unresolved dispute shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise or assignment of any Executory Contract or Unexpired Lease to the Purchaser and full payment of any applicable Cure pursuant to this Article V.D, or upon and in accordance with any resolution of a Cure dispute (whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty), shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assumed and assigned in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, in the amount and at the time in the ordinary course of business or upon and in accordance with any resolution of a Cure dispute (whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty), shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, in the event that any counterparty to an Executory Contract or Unexpired Lease receives a notice of assumption and applicable proposed Cure amount, and disputes the Debtors' proposed Cure amount, such party shall not be required to File a Proof of Claim with respect to such dispute.  Any counterparty to an Executory Contract or Unexpired Lease that does not receive a notice or applicable proposed Cure amount, and believes a Cure amount is owed, shall have thirty days after the Effective Date to File a Proof of Claim with respect to such alleged Cure amount, which Claim shall not be expunged until such Cure dispute is resolved.**

E.    **Insurance Policies**

To the extent that the D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Debtors shall be deemed to have assumed all D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors or Post Effective Date Debtors under the Plan as to which

no Proof of Claim need be Filed.  All beneficiaries under the D&O Insurance Policies reserve their rights under such D&O Insurance Policies subject to the limitations set forth in this Plan.

The Debtors or the GUC Trust, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date, and any current or former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject to the terms thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date.  Notwithstanding anything to the contrary in the Plan, the Debtors or the GUC Trust shall retain the ability to supplement such D&O Liability Insurance Policy as the Debtors or GUC Trust may deem necessary, subject to the prior written consent of the GUC Trust.

The Debtors shall continue to satisfy their obligations under their insurance policies in full and continue such policies in the ordinary course of business.  Each of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan.  On the Effective Date: (a) the Debtors shall be deemed to have assumed all such insurance policies and any agreements, documents, and instruments relating thereto in their entirety; and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the applicable Debtors or the GUC Trust unaltered.

## F.    Reservation of Rights

Nothing contained in the Plan or the Plan Supplement (unless otherwise explicitly provided) shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or the GUC Trust has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the GUC Trust, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date.

## G.    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Timing and Calculation of Amounts to Be Distributed

Except (1) as otherwise provided herein, (2) upon a Final Order, or (3) as otherwise agreed to by the Debtors or the GUC Trust, as the case may be, and the Holder of the applicable Claim, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the next Distribution Date after such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of distributions that the Plan provides for Allowed Claims in the applicable Class from the Distribution Agent.  In the event that any payment or distribution under the Plan is required to be made or performed on a date that is not a

Business Day, then the making of such payment or distribution may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Except as specifically provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B.      Rights and Powers of Distribution Agent**

      1.      Powers of the Distribution Agent

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties and exercise its rights under the Plan; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities and powers; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan.

      2.      Expenses Incurred on or after the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date and any reasonable compensation and expense reimbursement claims (including reasonable attorney and/or other professional fees and expenses) made by such Distribution Agent shall be paid in Cash by the GUC Trust.

**C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

      1.      Distributions Generally

Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the applicable register or in the Debtors' records as of the date of any such distribution (as applicable), including the address set forth in any Proof of Claim filed by that Holder.

      2.      Record Date of Distributions

After the Distribution Record Date, there shall be no further changes in the record Holders of Claims.  The Distribution Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

      3.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the GUC Trust, on the one hand, and the Holder of a Disputed Claim, on the other hand, or as set forth in a Final Order, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all of the Disputed Claim has become an Allowed Claim or has otherwise been resolved by settlement or Final Order; *provided that*, if the GUC Trust does not dispute a portion of an amount asserted pursuant to an otherwise Disputed Claim, the Distribution Agent may make a partial distribution on account of that

portion of such Claim that is not Disputed at the time and in the manner that the Distribution Agent makes distributions to similarly situated Holders of Allowed Claims pursuant to the Plan. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

4.      <u>De Minimis Distributions; Minimum Distributions</u>

The Distribution Agent shall not make any Cash distributions to any Holder of an Allowed Claim pursuant to Article III.C of this Plan on account of such Allowed Claim if such distribution is valued, in the reasonable discretion of the Distribution Agent, at less than $50.00, and each Holder of an Allowed Claim to which this limitation applies shall not be entitled to any distributions under the Plan.

5.      <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that either (a) a distribution to any Holder is returned as undeliverable or (b) the Holder of an Allowed Claim does not respond to a request by the Debtors or the Distribution Agent for information necessary to facilitate a particular distribution, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder or received the necessary information to facilitate a particular distribution, at which time such distribution shall be made to such Holder without interest, dividends, or other accruals of any kind; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the date that is one year after the Effective Date. After such date, all unclaimed property or interests in property shall revert to the GUC Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable local, state, federal, or foreign escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall not be entitled to any distributions under the Plan.

6.      <u>Manner of Payment Pursuant to the Plan</u>

The decision whether to make Distributions on account of Allowed Claims in cryptocurrency or U.S. Dollars shall be in the sole discretion of the GUC Trustee in his or her business judgment. In the event that the GUC Trustee elects to make Distributions in U.S. Dollars, the Distribution Agent may elect to make such Cash payment by check, wire transfer, automated clearing house, credit card, or as otherwise provided in applicable agreements.

**D.    Compliance Matters**

In connection with the Plan, to the extent applicable, the Debtors, the Post Effective Date Debtors, the GUC Trust, any Distribution Agent, and any other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, the Post Effective Date Debtors, the GUC Trust, the Distribution Agent, and any other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including witholding a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms that are reasonable and appropriate; *provided* that the GUC Trust and the Distribution Agent, as applicable, shall request appropriate documentation from the applicable distributees and allow such distributees a reasonable

amount of time to respond.  The Debtors, the Post Effective Date Debtors, the GUC Trust, the Distribution Agent, and any other applicable withholding and reporting agents reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

**E.     Claims Paid or Payable by Third Parties**

       1.     <u>Claims Paid by Third Parties</u>

In the event and to the extent that the Holder of a Claim receives a payment on account of such Claim from a party that is not a Debtor, a Post Effective Date Debtor, or the GUC Trust (or other Distribution Agent), as applicable, including any payments made in connection with the Sale Transaction, the Debtors or the GUC Trust, as applicable, may reduce such Claim (or portion thereof) as disallowed after filing and service of a notice and an opportunity for hearing.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Post Effective Date Debtor, or the GUC Trust (or other Distribution Agent), including payments made in connection with the Sale Transaction, as applicable, on account of such Claim, such Holder shall, within ten Business Days of receipt thereof, repay, return, or deliver any distribution held by or transferred to the Holder to the GUC Trust to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay, return, or deliver such distribution shall result in the Holder owing the GUC Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the ten-Business Day grace period specified above until the amount is repaid.

       2.     <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such payment, such Claim may be expunged or reduced on the Claims Register by the Claims, Noticing, and Solicitation Agent to the extent of any such payment without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.     <u>Applicability of Insurance Policies</u>

Except as otherwise provided herein, payments to Holders of Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any rights, defenses, or Cause of Action that the Debtors, the Post Effective Date Debtors, the GUC Trust or any other Entity may hold against any other Entity, including insurers, under any policies of insurance, agreements related thereto, or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under the applicable insurance policies, agreements related thereto, and applicable non-bankruptcy law.

**F.     Setoffs and Recoupment**

Except as otherwise expressly provided for herein, each Debtor, the Post Effective Date Debtors, the GUC Trust, or such Entity's designee as instructed by such Debtor, Post Effective Date Debtor, or the GUC Trust, as applicable, may, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy

Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup from an Allowed Claim any distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature whatsoever that the Debtor, the Post Effective Date Debtors, or the GUC Trust, as applicable, may have against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised, settled, or released on or prior to the Effective Date (whether pursuant to the Plan or otherwise). Notwithstanding the foregoing, except as expressly stated in Article VIII of this Plan, neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors, the Post Effective Date Debtors, or the GUC Trust of any such Claims, rights, or Causes of Action the Debtors or the GUC Trust may possess against such Holder.

### G.      Allocation between Principal and Accrued Interest

Except as otherwise provided herein, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof and as determined for federal income tax purposes) and second, to the extent the consideration exceeds the principal amount of the Allowed Claims, to the remaining portion of such Allowed Claim if any.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### A.      Disputed Claims Process

After the Effective Date, the Post Effective Date Debtors, the GUC Trust, and any party-in-interest, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

Notwithstanding anything in this Plan to the contrary: (1) all Claims against the Debtors that result from the Debtors' rejection of an Executory Contract or Unexpired Lease; (2) Claims filed to dispute the amount of any proposed Cure pursuant to section 365 of the Bankruptcy Code; and (3) Claims that the Debtors seek to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court, if not otherwise resolved through settlement with the applicable claimant.

On the Effective Date, the Debtors, Post Effective Date Debtors, or GUC Trustee, as applicable, may establish one or more accounts or funds to hold and dispose of certain assets, pursue certain litigation (including the Causes of Action preserved under the Plan or otherwise vesting in the GUC Trust), and/or satisfy certain Claims (including Claims that are contingent or have not yet been Allowed). For any such account or fund, the Debtors, Post Effective Date Debtors, or the GUC Trustee, as applicable, may take the position that grantor trust treatment applies in whole or in part. To the extent such treatment applies to any such account or fund, for all U.S. federal income tax purposes, the beneficiaries of any such account or fund would be treated as grantors and owners thereof, and it is intended, to the extent reasonably practicable, that any such account or fund would be classified as a liquidating trust under section 301.7701-4 of the Treasury Regulations. Alternatively, any such account or fund may be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9. If such rules apply, such assets would be subject

44

to entity-level taxation, and the Debtors and the GUC Trust would be required to comply with the relevant rules.

## B.     Objections to Claims

Except as otherwise specifically provided in the Plan, after the Effective Date, the GUC Trustee shall have the sole authority on behalf of the Debtors or Post Effective Date Debtors to:  (1) File, withdraw, or litigate to judgment, any objections to Claims; and (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the GUC Trust shall have and retain any and all rights and defenses each such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to Article IV.S of the Plan.

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.  For the avoidance of doubt, the Bankruptcy Court may, after notice and an opportunity for a hearing, extend the time period to object to Claims set forth in this paragraph at any time, including before or after the expiration of one hundred eighty days after the Effective Date, in its discretion or upon request by the GUC Trust or any party in interest.

## C.     Estimation of Claims

Before or after the Effective Date, the Debtors, Post Effective Date Debtors, or the GUC Trust, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any party previously has objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Debtors, Post Effective Date Debtors, or the GUC Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Disputed Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Disputed Claim is estimated.

## D.     No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; *provided* that if only a portion of a Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

45

**E.      Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim becomes a Final Order, the Distribution Agent shall provide to the Holder of such Allowed Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Allowed Claim unless required under applicable bankruptcy law.

**F.      No Interest**

Unless otherwise specifically provided for herein or by Final Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**G.      Adjustment to Claims without Objection**

Any Claim that has been paid, satisfied, amended, superseded, cancelled, or otherwise expunged (including pursuant to the Plan) may be adjusted or expunged on the Claims Register at the direction of the GUC Trust after notice and an opportunity for a hearing.

**H.      Time to File Objections to Claims**

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

**I.      Disallowance of Claims**

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the GUC Trust, as applicable.

**Except as otherwise provided herein or as agreed to by the Debtors, Post Effective Date Debtors, or the GUC Trust, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date subject to the approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

**J.      Amendments to Proofs of Claim**

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court after notice and an opportunity for a hearing or the GUC Trust, and any such new or amended Proof of Claim Filed shall be deemed disallowed in full and expunged without any further action, order, or approval of the

Bankruptcy Court after notice and an opportunity for a hearing; *provided, however,* that notwithstanding the foregoing, nothing herein shall preclude or enjoin any governmental unit from filing or asserting a proof of claim on or before the Governmental Bar Date, nor disallow, expunge, release, or discharge any claim so filed or asserted.

## ARTICLE VIII.

## EFFECT OF CONFIRMATION OF THE PLAN

**A.      Releases by the Debtors**

**Notwithstanding anything contained in the Plan to the contrary and, in any case, subject to and dependent on the outcome of the ongoing Special Committee Investigation, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Post Effective Date Debtors, and their Estates, and in each case on behalf of themselves and their respective successors, assigns, and representatives, who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post Effective Date Debtors, or their Estates, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, Post Effective Date Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Post Effective Date Debtors, or their Estates, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Post Effective Date Debtors, or their Estates (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Chapter 11 Cases and related adversary proceedings, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents or the Sale Transaction, any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of consummation of the Plan, the administration and implementation of the Sale Transaction or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases described in this Article VIII.A by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.A is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Causes of Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any of the Post Effective Date Debtors or GUC Trust or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.**

47

**Notwithstanding anything to the contrary contained herein, nothing in this Plan shall release, waive, or otherwise limit the rights, duties, or obligations of the Purchaser under the Asset Purchase Agreement or the Definitive Documents.**

B.      **Releases by Holders of Claims and Interests**

**Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents or Sale Transaction, any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of consummation of the Plan, the administration and implementation of the Sale Transaction, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date, *provided that* nothing in this Article VIII.B shall be construed to release the Released Parties from actual fraud, willful misconduct, or gross negligence as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.B, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.B is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Causes of Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any of the Releasing Parties or the Post Effective Date Debtors or the GUC Trust or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.**

C.      **Exculpation**

**Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor release or the third-party release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any act or omission arising on or after the Petition Date and prior to the Effective Date based on the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or consummation of the Disclosure Statement, the Plan, the Special Committee Investigation, any Definitive Documents or Sale Transaction, any**

48

**contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for Causes of Action related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, malpractice, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan**

D.      **Injunction**

**The assets of the Post Effective Date Debtors and of the GUC Trust shall be used for the satisfaction of expense obligations and the payment of Claims and Interests only in the manner set forth in this Plan and shall not be available for any other purpose.  All Persons and Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, Post Effective Date Debtors, the GUC Trust, or the Debtors' Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or the Confirmation Order, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan.**

E.      **Release of Liens**

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order, on the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors shall automatically revert to the applicable Post Effective Date Debtor or the GUC Trust, as applicable, and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Post Effective Date Debtors.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Post Effective Date Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as requested by the Post Effective Date Debtors or GUC Trust to evidence the release of such Lien, including the execution, delivery, and filing or recording of such documents evidencing such releases.  The presentation or filing of the Confirmation Order to or with any local, state, federal, or foreign agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

49

**F.      Protection against Discriminatory Treatment**

As provided by section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Entity, including Governmental Units, shall discriminate against any Debtor, Post Effective Date Debtor, or the GUC Trust or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, any Debtor, Post Effective Date Debtor, or the GUC Trust, or any Entity with which a Debtor, Post Effective Date Debtor, or the GUC Trust has been or is associated, solely because any Debtor was a debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**G.      Document Retention**

On and after the Effective Date, the Post Effective Date Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post Effective Date Debtors or the GUC Trust.

**H.      Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**I.      Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  **All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A.      Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

1. The Bankruptcy Court shall have entered the Confirmation Order, which shall be in a form and substance reasonably satisfactory to the Debtors and the Committee, and such order shall be a Final Order and in full force and effect.

50

2. If a Sale Transaction pursuant to the Bidding Procedures occurs, all conditions precedent to effectiveness of the Asset Purchase Agreement shall have been satisfied or duly waived.

3. The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Definitive Documents.

4. Each Definitive Document and each other document contained in any supplement to the Plan, including the Plan Supplement and any exhibits, schedules, amendments, modifications or supplements thereto or other documents contained therein, shall have been executed or Filed, as applicable, in form and substance consistent in all respects with the Plan, and shall not have been modified in a manner inconsistent therewith;

5. The Professional Fee Escrow Account shall have been established and funded with Cash in accordance with Article II.B.2 of the Plan and, to the extent that all Allowed Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims, and Other Priority Claims are not to be paid in full on the Effective Date, the Debtors shall have established an account funded with Cash to pay such amounts.

6. The GUC Trust Reserve shall have been established and funded based upon the GUC Trust Budget with Cash in accordance with the Plan.

7. The Plan shall have been substantially consummated or shall be anticipated to be substantially consummated concurrently with the occurrence of the Effective Date.

**B.      Waiver of Conditions Precedent**

Except as otherwise specified in this Plan, any one or more of the conditions to the Effective Date set forth in Article IX.A of the Plan may be waived by the Debtors in consultation with the Committee, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

**C.      Effect of Non-Occurrence of Conditions to Effective Date**

If the Effective Date does not occur, then the Plan will be null and void in all respects, any and all compromises or settlements not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including with respect to the fixing, limiting, or treatment of any Claim or Interest), shall be deemed null and void, and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action held by any Debtor or any other Entity; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity in any respect.

**ARTICLE X.**

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.      Modification of Plan**

Subject to the limitations and terms contained in the Plan, the Debtors reserve the right to (1) amend or modify the Plan before the entry of the Confirmation Order, in accordance with the Bankruptcy Code and the Bankruptcy Rules and (2) after the entry of the Confirmation Order but before substantial

consummation of the Plan, the Debtors or the GUC Trust, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**B.      Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications or amendments to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.      Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

**D.      Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (1) the Plan will be null and void in all respects; (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Classes of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if

52

necessary, liquidate, any Cure Claims or other Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor or the Estates that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan; *provided* that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court;

7.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) anything that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan and the Confirmation Order; or (d) related to section 1141 of the Bankruptcy Code;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

13.      consider any modifications of the Plan to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

14.      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Entity, and resolve any cases,

53

controversies, suits, or disputes that may arise in connection with any Entity's rights arising from or obligations incurred in connection with the Plan;

15.    hear and determine matters concerning local, state, federal, and foreign taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

16.    enter an order or Final Decree concluding or closing the Chapter 11 Cases;

17.    enforce all orders previously entered by the Bankruptcy Court; and

18.    hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or the Judicial Code.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

### A.    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post Effective Date Debtors, the GUC Trust, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims against and Interests in the Debtors or the Post Effective Date Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

### B.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Post Effective Date Debtors, the GUC Trust, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from

time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## C.      Payment of Statutory Fees

All fees under 28 U.S.C. § 1930 and any interest thereon under 31 U.S.C. § 3717 (together, the "Statutory Fees") outstanding as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  On and after the Effective Date, the Post Effective Date Debtors and GUC Trust shall be jointly and severally liable for paying any and all Statutory Fees in full in Cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.  The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Post Effective Date Debtors and GUC Trust shall each file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR.  Notwithstanding anything to the contrary in the Plan, (i) Statutory Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Statutory Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan.

## D.      Dissolution of Statutory Committees

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided*, however, that such committees will remain in existence for the limited purposes of (a) pursuing, supporting, or otherwise participating in, any outstanding appeals in the Chapter 11 Cases; and (b) filing, objecting, or otherwise participating in, any final fee applications of Professionals.

## E.      Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

## F.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each such Entity.

## G.      Post-Effective Date Service of Documents

Pursuant to Bankruptcy Rule 2002 and any applicable local rule, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee, counsel to the Debtors, counsel to the GUC Trust, and all entities on the Bankruptcy Rule 2002 service list, as well as any parties who may be affected by the relief sought.  With the exception of the Debtors and the U.S. Trustee, any Person desiring to remain on the Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the GUC Trust within thirty (30) days after the Effective Date.  Persons shall be notified of such continued notice

55

requirements in the notice of entry of the Confirmation Order.  **Persons who do not file a request for continued service within thirty (30) days after the Effective Date shall be removed from the Bankruptcy Rule 2002 service list;** *provided, however*, **that nothing herein shall affect or impair the obligation of any movant to serve notice upon any party whose rights will be directly affected or impaired by the relief sought.**

Notwithstanding the foregoing, after the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Post Effective Date Debtors or the GUC Trust shall be served on:

| | |
|---|---|
| Post Effective Date Debtors | **Reliz Technology Group Holdings Inc.**<br>33 Irving Place<br>Chicago, Illinois 10003<br>Attention:  Joe Perry<br>Interim Chief Executive Officer,<br>E-mail address:  joe.perry@blockfills.com<br><br>with copies for information only (which shall not constitute notice) to: |
| Counsel to the<br>Post Effective Date Debtors | **MCDERMOTT WILL & SCHULTE LLP**<br>David R. Hurst (I.D. No. 3743)<br>Andrew A. Mark (I.D. No. 6861)<br>The Brandywine Building<br>1000 N. West Street, Suite 1400<br>Wilmington, Delaware 19801<br>Telephone: (302) 485-3900<br>Email:  dhurst@mcdermottlaw.com<br>         amark@mcdermottlaw.com<br>-and-<br><br>Darren Azman (admitted *pro hac vice*)<br>Joseph B. Evans (admitted *pro hac vice*)<br>R. Ethan Dover (admitted *pro hac vice*)<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Telephone: (212) 547-5400<br>Email:  dazman@mcdermottlaw.com<br>         jbevans@mcdermottlaw.com<br>         edover@mcdermottlaw.com<br><br>-and-<br><br>Gregg Steinman (admitted *pro hac vice*)<br>333 SE 2nd Avenue, Suite 4500<br>Miami, Florida 33131<br>Telephone: (305) 358-3500<br>Email:  gsteinman@mcdermottlaw.com |

| | |
|---|---|
| GUC Trust | **[TBD]** |

with copies for information only (which shall not constitute notice) to:

| | |
|---|---|
| Counsel to the GUC Trust | **[TBD]** |

with copies for information only (which shall not constitute notice) to:

**H.     Entire Agreement; Controlling Document**

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan; *provided, however*, that notwithstanding the foregoing or anything to the contrary herein, to the extent there is any conflict between the Plan and the Confirmation Order, on the one hand, and the Asset Purchase Agreement, on the other hand, the Plan and Confirmation Order shall control.  Except as set forth in the Plan, in the event that any provision of the Disclosure Statement, the Plan Supplement, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

**I.     Plan Supplement**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims, Noticing, and Solicitation Agent at https://www.veritaglobal.net/BlockFills or the Bankruptcy Court's website at https://www.deb.uscourts.gov/.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

**J.     Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it

may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

**K.       Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes to accept or reject the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, neither any of such parties nor individuals or the Debtors or the GUC Trust will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan.

**L.       Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, or as Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed prior to the Confirmation Date; *provided,* this Article XII.L shall not apply to any Governmental Unit.

Dated:  May 28, 2026            **RELIZ TECHNOLOGY HOLDINGS INC**.
on behalf of itself and all other Debtors


*/s/ Mark Renzi*

Mark Renzi
Chief Restructuring Officer
Reliz Technology Holdings Inc.


**MCDERMOTT WILL & SCHULTE LLP**

*/s/ David R. Hurst*

David R. Hurst (I.D. No. 3743)
Andrew A. Mark (I.D. No. 6861)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
Email:  dhurst@mcdermottlaw.com
        amark@mcdermottlaw.com


-and-

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
R. Ethan Dover (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
Email:  dazman@mcdermottlaw.com
        jbevans@mcdermottlaw.com
        edover@mcdermottlaw.com


-and-

Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
Telephone: (305) 358-3500
Email:  gsteinman@mcdermottlaw.com

*Counsel for Debtors and Debtors in Possession*

59